E. Howard Riugrosb, J.
Motions pursuant to sections 457-a and 549 of the Civil Practice Act by the Villag’e of Herkimer, one of the defendants in this action, to set aside verdicts returned by the jury in the amount of $30,000 and $5,000, in favor of the plaintiffs, Lauanna Darling’ and Harry Darling*, respectively. A similar motion on behalf of the other defendant, Robert Ashley, has been denied.
The accident out of which the claims of these plaintiffs arose occurred at about 10 o’clock on the evening of September 27, 1955, at a point about one and one-half miles northerly of the corporation limits of the village of Herkimer on New York State Highway, Route 28, which runs generally in a northerly and southerly direction.
The plaintiffs were riding as guest passengers in the front seat of a 1955 Ford four-door sedan owned and being operated at the time by the defendant, Robert Ashley, in a northerly direction. Mr. and Mrs. David H. Knewasser were passengers in the rear seat of the automobile. In passing an automobile operated by Helen Hladysz, also traveling in a northerly direction, the defendant Ashley testified that he depressed the accelerator of his car to a point where a passing gear was engaged and the speed of the car accelerated by reason of the open throttle. The road was wet and the automobile skidded approximately diagonally crossways of the road and continued in this position along the highway for a distance of 150 to 160 feet, and on to the east shoulder of the road where it collided with the guide posts and cable, and the utility pole of the *595 defendant village. There was evidence that the force of the impact with the pole caused the left front door to spring open and the defendant Ashley and the plaintiff, Mrs. Darling, to be thrown from the car. Mrs. Darling was found unconscious in the ditch on the opposite side of the highway. The defendant Ashley was also rendered unconscious.
The utility pole was located between the easterly edge of the paved portion of the highway and the guide posts and cables. The distance between the westerly side of the pole and the edge of the pavement was four feet and three inches. The diameter of the pole at the base was estimated as 15 to 16 inches, which would place the easterly side of the pole about 8 to 10 inches from the guard fence. The guide posts and cables forming the safety barrier were six feet, three inches from the edge of the pavement on the east side of the road.
The testimony of the witnesses, including that of the defendant Ashley; the fact that the pole was broken in two places; and the damage to the car, reasonably warranted the finding implicit in the verdict of the jury that the impact of the car with the pole caused the door to spring open and Ashley and Mrs. Darling to be ejected through the open door, and that the utility pole was an efficient concurrent cause of the injuries sustained by Mrs. Darling.
The negligence, if any, of the village in continuing to maintain the utility pole in the position in which it was located on the occasion of the accident, remains to be considered.
Route 28 had been widened in the vicinity of the accident several years previously, and the safety barrier then consisting of posts and guardrails located between the pole and the road, was removed. A cable barrier consisting of guide posts and two cables was constructed easterly of the pole which was left standing on the shoulder of the road between the road and the cable safety barrier.
The shoulder of the road is part of the highway. (La Rue v. Tiernan, 260 App. Div. 337, affd. 285 N. Y. 550.) The right of the defendant village to install poles for transmission lines along the highway is statutory (Transportation Corporations Law, § 11, subd. 3-b), but as a corollary to that right is the duty to so maintain the transmission lines as not to create a hazard to lawful users of the highway. (Highway Law, § 319; Bailey v. Bell Tel. Co., 147 App. Div. 224, 226.)
Vehicular traffic on our highways has increased to the point where the shoulders of highways of necessity constitute an integral part thereof and are required by law to be utilized in the case of emergencies or for parking, As to whether the *596 defendant village was negligent in permitting the utility pole to remain on the shoulder between the road and the safety barrier, in the opinion of the court, presented a question of fact for the jury. The possibility of accident by reason of changed conditions would appear reasonably foreseeable in the exercise of ordinary care and prudence. Although the utility pole was not a nuisance at the time it was originally installed, the jury could find from the evidence that it had become so by lapse of time and changed conditions. (City of Mt. Vernon v. New York, New Haven & Hartford R. R. Co., 232 N. Y. 309; City of Olean v. Pennsylvania R. R. Co., 249 N. Y. 364; Stern v. International Ry. Co., 220 N. Y. 284, 293.)
The duty imposed relative to changed conditions was observed in the authority last cited, which involved the maintenance in Main Street, Buffalo, New York, of center poles along the right of way of the defendant International Railway Company. Said the court (pp. 293-296 [Cardozo, J.]):
“ We have the general disuse of centre poles in other cities, except where grassplots or other spaces in the centre of the street serve to subdivide the highway. And finally we have the growth in traffic * * * the change in methods of locomotion, the added chances and dangers of collision, and the need, obvious without evidence, of freeing the space between curb and curb from obstructions which could be made without risk to serve their purpose elsewhere. We place our judgment, not on any of these circumstances singly, but on all of them collectively. Their cumulative weight, we think, makes possible the inference that the centre poles had become dangerous, and that the danger was unreasonable. That the city had no record in its claims department of any similar collision is not decisive. * * *
‘ ‘ The defendants refer to cases in which a city planning an improvement has been held to be exonerated for errors of judgment in the plan * * *. A distinction has been drawn between affirmative approval, which will evidence a true exercise of discretion, and passive acquiescence, which may be merely a negligence omission to remedy an evil. * * * Even in cases of express approval, the rule of exemption has been kept by later cases within narrow bounds. # * * These poles were not a municipal improvement. They were not planned and placed by the city. They were planned and placed by the railway. * * *
‘ ‘ Reliance is placed upon rulings that stepping stones, hitching posts, hydrants, shade trees and the like are legitimate *597 obstructions * * *. Always, however, the ruling was made, not absolutely, but relatively to particular conditions of location, of convenience or of necessity. * * *
“ The point is made that if the centre poles were safe when first erected, the city could not compel them to be moved, though they later became dangerous. * * * Here the things to be
moved are mere incidents or appurtenances; they do not affect the location of the right of way; and wherever they are placed, the franchise in its substance remains intact.”
It necessarily follows that the motions on behalf of the defendant village should be denied. Motions for a directed verdict and for a nonsuit made at the close of the evidence are likewise denied.
Ordered accordingly.