OPINION OF THE COURT
Allan L. Winick, J.
There are two motions before this court, one, by defendant, seeks an order dismissing the complaint and directing that summary judgment be entered in favor of defendant and against plaintiffs. The second is a cross motion by plaintiffs seeking leave to amend their complaint.
history of the case
The above-captioned matter was commenced by service of the summons and complaint on September 17, 1984. Issue was joined on October 23, 1984 by service of a verified answer. Both sides conducted discovery between October 23, 1984 and February 27, 1985, the date plaintiff served a verified supplemental bill of particulars. Defendant’s notice of motion to dismiss the complaint was served on April 11, 1985. The plaintiffs’ notice of cross motion dated May 15, 1985 and the amendment to the verified supplemental bill of particulars appear to have been accepted by "R. O. Donohue” on behalf of defendant. The "acceptance” is not dated. Both parties have *372 submitted memoranda in support of their respective positions as well as in opposition to the other’s position.
FACTS
It is uncontroverted that defendant’s power lines fell onto plaintiffs’ property causing the closing of the Meadowbrook Parkway at or near the intersection of Babylon Turnpike in Hempstead, New York. The parkway was closed at approximately 11:30 a.m. on March 2, 1983 until some undisclosed hour on March 3, 1983. Plaintiffs claim that defendant is liable for the costs plaintiff incurred for labor ($3,660.12), and equipment ($1,603.06), utilized in diverting traffic from the parkway in the vicinity of the fallen power lines.
Plaintiffs claim that as a result of defendant’s negligence plaintiffs were forced to provide maintenance forces to barricade entrances, place detours and maintain traffic. The services provided by the plaintiffs were in addition to the traffic control provided by the State Police.
Plaintiffs fail to set forth any facts to support their contention that they "abated a known hazardous condition” on their property. Quite to the contrary, it appears that defendant was responsible for correcting the condition and did so, promptly and without assistance from plaintiffs. Indeed, plaintiff’s personnel was assigned to assist State Police in closing down the parkway. (See, plaintiff’s interoffice memorandum.)
There are no reported injuries or damage to the road. Plaintiff’s only damages are the costs incurred for labor and equipment for support personnel.
CONCLUSIONS OF LAW
It is a well-established principle that leave to amend should be freely given (CPLR 3025 [b]). Recent trends, however, have narrowed that principle where the claim to be added is patently without merit. (General Motors Acceptance Corp. v Shickler, 96 AD2d 926 [2d Dept 1983].) A pleading which is devoid of merit should not be allowed. (Walter v Bauer, 88 AD2d 787 [4th Dept 1982]; Taylor v Taylor, 84 AD2d 947 [4th Dept 1981]; Boccio v Aspin Trucking Corp., 93 AD2d 983 [4th Dept 1983.]) It is no longer tolerable to grant a motion to amend without passing on the validity of the cause of action as amended. (East Asiatic Co. v Corash, 34 AD2d 432 [1st Dept 1970].) "[W]hen a substantial question is raised as to the sufficiency or meritoriousness of a proposed pleading or matter *373 contained therein, * * * such question should be resolved at the threshold in order to obviate the possibility of needless time consuming litigation.” (Sharapata v Town of Islip, 82 AD2d 350, 362, affd 56 NY2d 332 [1982].)
This court has examined the proposed amended complaint and finds that it is without merit. No provision should be implemented by decisional law so as to establish a cause of action and a right of recovery not contemplated by the Legislature. (Deso v Albany Ladder Co., 26 AD2d 182, 185 [3d Dept 1966].) Plaintiffs are asking this court to do just that by their demand for recovery of the costs incurred for labor and equipment.
The general rule is that public expenditures made in the performance of governmental functions are not recoverable. (Koch v Consolidated Edison Co., 62 NY2d 548 [1984].) There is no common-law right to recover nor is there a statutory authority allowing recovery for the labor and equipment provided by the State in connection with the closing of the parkway. The plaintiff may not recover damages for undertaking its duty to ensure the safety of the traveling public. That duty is separate and distinct from the landowner’s duty to abate a known dangerous condition existing on its property. (Drake v State of New York, 97 Misc 2d 1015, affd 75 AD2d 1016 [4th Dept 1980].) Plaintiffs’ reliance on Drake is misplaced. Drake imposed liability on the State for breach of the duty of care, and for the breach of its duty to maintain its highways in a reasonably safe condition. There are no allegations herein that the State breached those duties.
This court accepts as true the plaintiffs’ contention that in addition to its governmental functions plaintiffs can also act as landowners. This court does not, however, accept as true the notion that plaintiff was acting as a landowner in the case at bar. Plaintiffs performed the very tasks intended by the Legislature. They exercised (their) functions, powers and duties relating to traffic regulation and control. (Transportation Law § 14.) Control of traffic is a matter within the police power since it relates to the health and safety of the public. (Tornado Indus. v Town Bd., 187 NYS2d 794 [Nassau County 1959.]) Public safety, public health and public welfare are all legitimate objects of police power and are broad and inclusive. (Yonkers Community Dev. Agency v Morris, 37 NY2d 478 [1975].) "Police power is a power of government inherent in the sovereignty and is to be exercised in the public interest for the public good.” (American Consumer Indus. v City of New *374 York, 28 AD2d 38, 41 [1st Dept 1967].) The power to regulate and control the use of public roads and highways is primarily the exclusive prerogative of the States. (People v Bielmeyer, 54 Misc 2d 466 [City Ct of Buffalo 1967].)
Inasmuch as the plaintiffs assigned personnel to assist the State Police in controlling traffic, this court finds no reason to depart from the aforementioned general rule. Prohibiting recovery for public expenditures made in the performance of governmental functions "is grounded in considerations of public policy”. (Koch v Consolidated Edison Co., pp 560-561, supra.) Nothing in the somewhat closer relationship between Long Island Lighting Co. and plaintiffs warrants departure from that rule (Koch v Consolidated Edison Co., supra).
For the reasons set forth in Koch (supra), the statutory exceptions to the general rule regarding public expenditures are inapplicable. With regard to the statutes cited by plaintiffs, this court finds that they too are inapplicable for the reasons discussed herein.
For example, Highway Law § 320 provides for treble damages against "[w]hosoever shall injure any highway or bridge maintained at the public expense”. Plaintiffs do not allege injury to a highway or bridge and, in fact, there was no such injury.
Public Service Law § 65 (1) requires that gas and electric corporations and municipalities provide safe and adequate service, and that they impose just and reasonable charges, and further, that they do not discriminate or give unreasonable preference in administering these services. No proof of a violation of that section is set forth in plaintiffs’ papers.
Electric corporations must furnish, place, construct, operate, maintain and replace when necessary all overhead electric lines and service connections at their own expense. (16 NYCRR part 98.) The proof establishes that defendant did replace the overhead lines at its own expense in compliance with the regulation.
Standardized traffic control devices must be made available when any work is performed within the highway boundary, either public or private, which would interfere with traffic using the roadway. (17 NYCRR parts 350-355.) The traffic control devices shall be available prior to the beginning of maintenance or construction operations and shall be properly installed and maintained during the time they are required (17 NYCRR 350.4). These sections do not provide for reim *375 bursement to the State when such devices are made available. Similarly, 17 NYCRR 131.9 (b) requires a minimum vertical clearance but plaintiff fails to set forth any proof that this section was violated except for the emergency condition which existed during part of March 2, 1983 and continuing until repairs were completed on March 3, 1983. This section does not provide for damages to be paid to the State for violation of this section.
Highway Law § 319 addresses obstructions of the highway similar to the kind herein. It provides for removal of a temporary obstruction by the town superintendent if such obstruction is not removed within 48 hours after notifying the owner of the obstruction. Section 319 also provides that permanent obstructions shall be removed within 30 days or the town superintendent shall remove the obstruction and charge the costs incurred against the owner. It does not provide for damages to be paid to the State if the owner promptly removes the obstruction. It is also noted that in the case at bar, the obstruction continued for considerably less than 48 hours.
Lastly, plaintiff’s contention that the fallen power lines constitute a nuisance pursuant to RPAPL 841 is without merit. Nuisance is a conscious and deliberate act involving the idea of continuity or recurrence (Metropolitan Life Ins. Co. v Moldoff, 187 Misc 458, affd 272 App Div 1039 [1st Dept 1947]). "While it is not always necessary that the act complained of should be habitual or periodical, a nuisance, as a general rule, involves the idea of continuity or recurrence. Doubtless some degree of permanence is an essential element of the conception of nuisance.” (Ford v Grand Union Co., 240 App Div 294, 296 [3d Dept 1934].) The facts herein do not support a finding that the emergency condition, to wit: fallen wires, was caused consciously or deliberately by the defendant, nor is it likely to continue or recur.
On a motion to dismiss a complaint for a failure to state a cause of action, the court must accept the facts alleged in the complaint as true and then determine whether the facts fit within any cognizable legal theory. (Klondike Gold v Richmond Assoc., 103 AD2d 821 [2d Dept 1984]; Morone v Morone, 50 NY2d 481; Rovello v Orofino Realty Co., 40 NY2d 633.) For the reasons stated herein, this court finds the facts, as presented, do not fit within any cognizable legal theory. The proof of evidentiary facts is insufficient to raise a triable issue of fact.
*376 Summary judgment is proper to eliminate unnecessary expense to named litigants where no issue of material fact is presented to justify a trial. (Axelrod v Armitstead, 36 AD2d 593; cf. Wolfgruber v Upjohn Co., 72 AD2d 59.)
Summary judgment "is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues”. (Andre v Pomeroy, 35 NY2d 361, 364 [1974]; Rotuba Extruders v Ceppos, 46 NY2d 223 [1978]; Gibbons v Hantman, 58 AD2d 108 [2d Dept 1977].) "[W]hen there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims promptly adjudicated.” (Andre v Pomeroy, supra, at p 364.)
Plaintiffs’ application seeking leave to amend their complaint is denied. Plaintiff has failed to demonstrate the existence of a triable issue to defeat defendant’s application for summary judgment. The defendant’s motion for summary judgment is granted.