OPINION OF THE COURT
Joseph G. Owen, J.
Petitioner Orange & Rockland Utilities, Inc. seeks a judgment setting aside a 2003 Village of Kiryas Joel tax invoice for fiscal year June 1, 2003 to May 31, 2004. Respondent Village of Kiryas Joel moves to dismiss the proceeding.
For the reasons which follow, it is hereby decided that respondent’s motion is granted, and the petition is dismissed in its entirety.
Submit judgment to Orange County Clerk, as Clerk of the Court, with bill of costs.
In or about March 2002, respondent Village of Kiryas Joel commenced work on a pedestrian walkway renovation project, funded in part by the Federal and State Departments of Transportation. This project required, among other things, the relocation of a number of utility poles belonging to petitioner Orange & Rockland Utilities, Inc., which were within the boundaries of the proposed walkways.
Prior to beginning the project, the State Department of Transportation (DOT) informed the Village that no grant funds could be used to fund the relocation of the utility poles, as the DOT considered this cost to be the responsibility of petitioner utility company (see, Highway Law §§ 52, 81, 319; 23 CFR 645.103 [d]). Accordingly, by letter dated March 19, 2002, the Village advised petitioner of its responsibility to pay these costs, and requested the utility company’s cooperation. Petitioner responded, by letter dated May 6, 2003, opining that the utility poles did not constitute “obstructions” for purposes of Highway Law § 81, and that accordingly “the Village . . . should be prepared to pay the cost of the relocation” (May 6, 2003 letter from Robert P Selya to Donald G. Nichol, Esq. [copy annexed as exhibit B to petition]).
The parties continued to disagree as to their respective responsibilities. By letter dated June 5, 2002, petitioner set forth its design for removal and reinstallation of the poles at a cost to the Village of $18,642. The Village thereafter forwarded a check to petitioner in the required amount, with a reservation of rights and “under duress and protest” (Aug. 15, 2002 letter from *203 Gedalye Szgedin to Teri M. Johnson [Szgedin letter; copy annexed as exhibit E to petition]). In making this payment the Village explained that it “is subject to obligations and commitments to its contractor and to the State and cannot jeopardize obligations and those commitments by further delay of this project due to O & R’s refusal” (Szgedin letter). Work was thereafter completed on the project in or about November 2002.
On January 30, 2003, the Village Board of Trustees passed Local Law No. 1, entitled “Assessments For The Removal of Obstructions And Moving Resetting Poles And Wires” and adding a new “article II” to chapter 6 of the Code of the Village of Kiryas Joel (Local Law No. 1). By this enactment the Village found “that wherever there shall exist an ‘obstruction’, as that term is used and defined in N.Y. Highway Law § 319 (1), that the duties of each owner or occupant of land situate along the highway or right-of-way, along with all telephone, telegraph, electric railway, cable television, and other electrical companies shall be consistent with the duties expressed in N.Y. Highway Law § 319 (2)” (Local Law No. 1 of 2003 [copy annexed as exhibit F to motion to dismiss] § 6-3, at 2). The law provided for notice by publication, hearing and appeal procedures.
The New York State Board of Real Property Services advised petitioner on or about March 6, 2003 that its tentative special franchise assessment for the 2003 Village assessment roll was $880,269. Consistent with RPTL 622, the written assessment notice stated that, as this amount was tentative only, it was not to be entered on the assessment roll pending receipt of final assessments for entry to be transmitted at a later date.
Thereafter, on April 16, 2003 and by certified mail, return receipt requested, the Village forwarded to petitioner a written “Notice of Hearing for Assessment of Removal Expenses” in accordance with the aforementioned Village Code, article II, chapter 6. A hearing date of May 6, 2003 was scheduled. Upon petitioner’s failure to appear at the hearing, the Village assessed the sum of $18,642 against petitioner. This amount was reflected as a “special assessment” in the tax invoice issued to petitioner on May 20, 2003. The State Board of Real Property Services subsequently issued its “Certificate of Final Special Franchise Assessment” on September 4, 2003, assessing petitioner in the amount of $880,269.
Petitioner commenced this CPLR article 78 proceeding by notice filed on or about July 15, 2003, seeking a judgment setting aside this tax invoice. Respondent Village moves to dismiss.
*204 The court begins its analysis by recognizing that Local Law No. 1 “carries a presumption of constitutionality and that . . . [petitioner] bear[s] the burden of demonstrating beyond a reasonable doubt that it is unconstitutional” (see, Alliance of Am. Insurers v Chu, 77 NY2d 573, 585 [1991]). Among other things, petitioner argues that Local Law No. 1 is unconstitutionally inconsistent with the general laws of New York (cf. Incorporated Vil. of Nyack v Daytop Vil., 78 NY2d 500, 505 [1991]) (third, fifth and sixth causes of action). Specifically, petitioner maintains that the law contravenes Village Law § 5-530, which authorizes taxes on public utilities based only upon gross income or gross operating income. The local law in issue does not impose a tax, however, but rather imposes a special assessment (see, RPTL 622; Matter of New York Tel. Co. v Common Council of City of Rye, 43 Misc 2d 668, 669 [1964], affd 25 AD2d 682 [1966], lv denied 19 NY2d 582 [1967]; 99 NY Jur 2d, Taxation and Assessment § 733). As such, there is no inconsistency.
Petitioner also asserts that the Village’s imposition of the special assessment has no basis in law and unfairly discriminates against petitioner by shifting to it costs that should be borne by the taxpayer (second, fourth and seventh causes of action). However, as respondent points out, the provisions of Highway Law § 319 have been held applicable to villages as well as to towns, at least by implication (see, e.g., Darling v Village of Herkimer, 11 Misc 2d 593, 595, [1957], dismissal denied 10 AD2d 799 [I960]; 1981 Ops Atty Gen No. 81-67). Highway Law § 319 imposes upon the owner of a permanent highway obstruction the cost of its removal (see, State of New York v Long Is. Light. Co., 129 Misc 2d 371, 375 [1985]).[1] In any event, even if Highway Law § 319 is inapplicable, as a general principle of law utility companies must bear the cost of relocation in matters relating to health, safety and welfare:
“It is established law that a utility company granted the privilege of maintaining its facilities in public streets must relocate them at its own expense ‘ “whenever the public health, safety or convenience requires the change to be made” ’ (Matter of Consolidated Edison Co. of N.Y. v Lindsay, 24 NY2d 309, 316 [1969], quoting Transit Comm. v Long Is. R.R. Co., 253 NY 345, 351, 352 [1930]). It must do so *205 because the privilege, authorized by statute (see Transportation Corporations Law, § 27; Village Law, § 4-412, subd 3, par [6]), grants the utility no property interest in the right of way, only a license to maintain its facilities there.” (Rochester Tel. Corp. v Village of Fairport, 84 AD2d 455, 456 [1982], appeal withdrawn 56 NY2d 808 [1982]; see also, Matter of Consolidated Edison Co. of N.Y. v City of New York, 171 AD2d 865, 866 [1991], appeal dismissed 78 NY2d 951 [1991].)
Certainly, as Local Law No. 1 is in conformity with the provisions of general law, it does not arbitrarily or unreasonably “single out” a specific entity or group (compare, Village of Hempstead v SRA Realty Corp., 208 AD2d 713 [1994]).[2]
It is true, as petitioner argues, that “[i]f the relocation is not necessary to maintain or improve the street conditions . . . the municipality must pay the cost” (Rochester Tel. Corp. v Village of Fairport, supra, 84 AD2d at 456). However, prior to invoking CPLR article 78 a petitioner is required to fully exhaust available administrative remedies (see, White v Incorporated Vil. of Plandome Manor, 190 AD2d 854, 855 [1993], lv denied 83 NY2d 752 [1994]). Moreover, the doctrine of laches applies to such proceedings (see, Vickery v Village of Saugerties, 64 NY2d 1161 [1985]). Petitioner was advised at least as early as March 2002 of the Village’s directive to pay for the subject relocation costs. Moreover, petitioner admits receiving actual notice of the May 6, 2003 assessment hearing in time to attend.[3] Rather than timely challenging respondent’s authority to impose these costs (compare, Rochester Tel. Corp. v Village of Fairport, supra [utility company paid contested costs under protest and sued to recover]), or attending the assessment hearing, petitioner herein simply refused to pay the charges and waited until the default imposition of a special assessment before formally acting. While the court agrees that it must still entertain petitioner’s purely legal and constitutional challenges to Local Law No. 1 (cf. Carey v Savino, 91 Misc 2d 50 [1977]), petitioner may not now seek a *206 hearing on factual issues relating to the nature of the federally funded improvement project.
For similar reasons, petitioner’s first cause of action is dismissed for failure to exhaust available administrative remedies (see, Semon Trust/Lord & Taylor v Board of Assessors, 160 AD2d 991, 992 [1990]; RPTL 554, 706).
Finally, petitioner argues that as it did not “own” the property upon which its poles were located, the imposition of a special assessment is improper (eighth cause of action). In the first instance, petitioner did own the utility poles themselves, and accordingly its argument is without merit. In any event, the general principles of law discussed above regarding a utility company’s payment for relocation costs renders this argument moot.
For the reasons herein stated, respondent’s motion is granted and the petition is dismissed in its entirety.

. The term “highway” includes sidewalk areas (see, Highway Law § 2 [4]; Williams v State of New York, 34 AD2d 101, 104 [1970]).

. In addition, while the retroactive effect of Local Law No. 1 may subject it to closer scrutiny (see, Village of Hempstead v SRA Realty Corp., 208 AD2d 713, 714 [1994]), it does not render the enactment invalid per se (see, Alliance of Am. Insurers v Chu, 77 NY2d 573, 586 [1991]).

. Petitioner’s allegation that it did not receive actual notice until May 4, 2003 is belied by the record, which indicates receipt of the written notice on April 17, 2003 (affirmation of Donald G. Nichol, Esq., dated Sept. 5, 2003, at 3 [exhibit H]). In any event, petitioner proffers absolutely no excuse for fading to attend the hearing in light of its acknowledged actual notice.