A91A0349. GANTT et al. v. PATIENT COMMUNICATIONS SYSTEMS, INC.

(406 SE2d 796)

ANDREWS, Judge.

Gantt, Lies and Executive Performance Technologies (EPT) appeal the trial court's grant of a directed verdict on their multi-count counterclaim.

This appeal stems from Gantt and Lies' departure from Patient Communications Systems (PCS), a company which developed and sold computer software to dentists. Gantt joined PCS in July 1986 and became its president and chief executive officer in May 1988. Although there was no written contract when Gantt began work in 1986, PCS agreed to pay him an annual salary of $75,000; PCS increased the salary with Gantt's promotions. Because of company cash flow problems, Gantt agreed that instead of receiving his salary, he would let it accrue on the company records.

The other individual appellant here, Donald Lies, became a director of PCS in December 1987 and resigned in September 1988. There was no evidence of a written employment contract between Lies and PCS.

In December 1988, internal tensions at PCS and the perception that Gantt was not committed to PCS goals, resulted in Gantt being terminated as CEO and president of the company. After this significant demotion, he resigned from any remaining employee responsibilities at the company.

When Gantt left PCS, he had accrued $42,000 in back salary. As a deduction from that accrued salary, Gantt claimed that he had purchased a laserjet printer from the company, a policy which had been authorized by the PCS board of directors.

After leaving PCS, Gantt and Lies formed the new company EPT, which was a direct competitor to PCS.

In May 1989, a PCS representative contacted police and reported that Gantt had "stolen" various equipment from PCS. The PCS representative did not tell the police that the allegedly stolen items had been deducted from Gantt's accrued salary.

In the meantime, as part of the EPT marketing strategy, Gantt attended a nationwide dental convention in May 1989. Pursuant to PCS' communications with the police at the same time, Gantt was arrested at the convention for possession of stolen property and the police confiscated the laserjet printer. Gantt was subsequently released and all charges were dismissed. Three days after Gantt's release, 500 commercial flyers which EPT had prepared to distribute at the dental convention were defaced with the words: "Beware David Gantt, Executive Pres Arrested from Exhibit Hall, and Stolen Equipment Confiscated." Trial testimony established that the confiscation of the printer, Gantt's arrest, and the dissemination of the flyers adversely affected EPT's convention business.

In June 1989, PCS filed suit against Gantt, Lies and EPT claiming, in essence, that between June and December 1988, PCS funds, time, and equipment were diverted to EPT. In response to the complaint, Gantt, Lies and EPT filed a counterclaim alleging breach of contract and various torts, including false arrest and imprisonment, defamation, slander, libel and tortious interference with business relations.

The case was tried for four days before a jury, at which time the trial court granted Gantt, Lies and EPT's motions for directed verdict and dismissed PCS's complaint in its entirety. In like manner, the trial court granted PCS's motion for directed verdict on the counterclaims.

1. In their first enumeration of error, Gantt, Lies and EPT argue that the trial court erred in directing a verdict on their claims of breach of contract since PCS did not pay salary and benefits to Gantt and Lies which it agreed to pay.

At the outset, we note that "in considering a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion." *Brown v. Commercial Credit &c. Corp.*, 172 Ga. App. 568, 572 (323 SE2d 822) (1984). A directed verdict is only authorized if there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom, demands a particular verdict. *Brown*, supra at 572; see OCGA § 9-11-50 (a).

Here there was no written employment contract for either Gantt or Lies. Nevertheless, as to Gantt's salary claim we find that "an employee may sue on an oral contract for employment terminable at will

'for the amount of compensation due him, based upon services actually performed by him up to the time of his discharge, and not for damages or for compensation for services not performed or for any breach of contract.' [Cits.] . . . '(W)hen the employee has actually performed services (under a contract terminable at will) he may recover of the employer the compensation due him for the services rendered.'" *E. D. Lacey Mills v. Keith*, 183 Ga. App. 357, 359-360 (359 SE2d 148) (1987), citing *Spindel v. Nat. Homes Corp.*, 110 Ga. App. 12, 15 (137 SE2d 724) (1964). Here, from the evidence presented, a jury could have found that Gantt was entitled to recover salary for the work he had already performed and the directed verdict as to these amounts was improperly granted. Similarly, there was evidence from which a jury could conclude that Gantt's claim for $125,000 he lost on a sale of company stock was an enforceable promise from PCS to pay and the trial court's grant of summary judgment on this claim was also improper. See *Lacey*, supra at 360.

The same reasoning governs our decision regarding Lies' claim for the $15,000 bonus which PCS promised him. Trial testimony indicated that the bonus was for work which Lies had already performed, and that the bonus had been recorded on PCS' records as a specific corporate debt. Given these two factors, we find that Lies' claim was legally enforceable, and the granting of the directed verdict on this amount was improper. See *Quinn v. Cardiovascular Physicians, P. C.*, 254 Ga. 216, 220 (326 SE2d 460) (1985); *Medlin v. Globe Continental Corp.*, 171 Ga. App. 103, 104 (318 SE2d 807) (1984); compare *Christensen v. Roberds of Atlanta*, 189 Ga. App. 289 (375 SE2d 267) (1988).

Finally, we address Gantt's claim for termination benefits. The only written evidence of the agreement regarding termination benefits was minutes from a May 1988 board of directors' meeting in which it was resolved that "David Gantt will receive twice his highest yearly earnings at the time of dismissal from PCS." The question before us is whether Gantt's termination as PCS president and CEO compelled his subsequent resignation as a company employee as to entitle him to termination benefits.

In determining whether Gantt's departure from PCS was voluntary, we are guided by *Fletcher v. Amax*, 160 Ga. App. 692 (288 SE2d 49) (1981) on appeal after remand, 166 Ga. App. 789 (305 SE2d 601) (1983), in which the court addressed a similar question. There, it was determined that a question of fact remained in the case as to the voluntary nature of the employee's resignation since management and ownership had changed hands and the employee's resignation might have been at the will of the company. A similar result must be reached here, since we cannot say as a matter of law that Gantt's departure from PCS was voluntary. The trial court's granting of the di-

rected verdict on these amounts was improper, since a question remained for the jury.

2. In the second enumeration of error, Gantt contends that the trial court erred in directing a verdict on his counterclaim for malicious arrest and false imprisonment.

(a) Gantt claims that his arrest for possession of stolen property was malicious, since PCS had transferred the property to him in lieu of salary and was aware that the property was not stolen. At trial, an invoice reflecting the transfer of equipment to Gantt and minutes from the PCS board of directors' meeting supported the fact that he had purchased the equipment out of his accrued salary and that PCS was aware of this arrangement.

OCGA § 51-7-1 provides that "[a]n arrest under process of law without probable cause, when made maliciously, shall give a right of action to the party arrested." An action for false arrest may lie when there has been an arrest under warrant, or when as in this case, the arrest was without a warrant. *Smith v. Embry*, 103 Ga. App. 375 (119 SE2d 45) (1961).

Lack of probable cause is defined in OCGA § 51-7-43 as existing "when the circumstances are such as to satisfy a reasonable man that the accuser had no ground for proceeding but his desire to injure the accused." Unless the facts regarding probable cause are undisputed, it is a question for the jury. See *Bennett v. Fine Jewelers &c.*, 194 Ga. App. 377 (390 SE2d 625) (1990); *Harmon v. Redding*, 135 Ga. App. 124 (218 SE2d 32) (1975).

Here, since evidence existed from which a jury could have found that PCS' motivation in pursuing Gantt's arrest was malicious and that PCS lacked probable cause, the trial court's grant of the directed verdict on the false arrest claim was error.

(b) The trial court's ruling on Gantt's claim of false imprisonment was also improper. "[T]he law has always made a fundamental distinction between a detention effectuated pursuant to process and detention which is not predicated on process. '(A)n action for false imprisonment will lie where a person is unlawfully detained under a void process, or under no process at all, and can not be maintained where the process is valid, no matter how corrupt may be the motives of the person suing out the process or how unfounded the imprisonment may be.' [Cit.] Thus, when the detention is predicated on *no process*, false imprisonment *is* an available remedy and liability depends upon whether a detention without supporting process was legally authorized under the circumstances. See generally *Collins v. Sadlo*, 167 Ga. App. 317 (306 SE2d 390) (1983)." *Williams v. Smith*, 179 Ga. App. 712, 714 (348 SE2d 50) (1986). See also OCGA §§ 51-7-20; 51-7-21.

Here, the California police officers who arrested Gantt had no

warrant and there was evidence from which a jury could have concluded that Gantt's arrest and detention were not legally authorized. Compare *Carruth v. Roberts*, 189 Ga. App. 247 (375 SE2d 499) (1988). Therefore, the trial court erred in directing a verdict on the false imprisonment claim.

3. In his third enumeration of error, Gantt claims the trial court erred in granting a directed verdict on his claim for defamation, slander and libel. This claim focuses on three separate items: the allegedly libelous flyer disseminated at the dental convention, the allegedly libelous "proof of claim" forms which PCS submitted to its insurer and the allegedly slanderous statements made by PCS officers to third parties regarding the crimes Gantt had committed.

We first address the claims for libel with respect to the flyer and the insurance forms. At the outset we conclude that there was evidence from which a jury could have concluded that the documents were libelous. See *Western Union Tel. Co. v. Vickers*, 71 Ga. App. 204 (30 SE2d 440) (1944); OCGA § 51-5-1. Therefore, we address only the issue of PCS' responsibility for publication of the documents.

"Generally, the rule of respondeat superior (the principal is liable for the torts of its employee committed while acting in the scope of employment) is applicable in libel cases. [Cits.]" *Ray v. Henco Electronics*, 156 Ga. App. 394, 395 (274 SE2d 602) (1980). In other words in determining a principal's liability, there is no requirement that an agent be expressly directed by the principal to publish a libel. *Mulherin v. Globe Oil Co.*, 173 Ga. App. 790 (328 SE2d 406) (1985). With respect to the insurance forms, there was ample evidence that they were completed by PCS employees while in the scope of their employment for PCS and the direction of the verdict on this portion of the claim was erroneous.

Similarly, the trial court's grant of the directed verdict on Gantt's claims arising from the publication of the flyer was improper. Although the defaced flyer creator denied any involvement of PCS in the creation of such document, the parties stipulated that he was a PCS shareholder, a former member of the PCS board of directors and the author of a PCS software package. A question for the jury remained as to whether this person acted as an agent for the corporation in publishing the flyer. See *Garren v. Southland Corp.*, 237 Ga. 484, 485 (228 SE2d 870) (1976).

The trial court properly granted a directed verdict with respect to the claims of slander. "[A] corporation is not liable for the slanderous utterances of an agent acting within the scope of his employment, unless it affirmatively appears that the agent was expressly directed or authorized to slander the plaintiff." *Garren*, supra at 485. In the absence of evidence that PCS directed the comments to be made, the grant of the directed verdict was proper. See *Garren*, supra; *Church*

*of God v. Shaw*, 194 Ga. App. 694 (391 SE2d 666) (1990).

4. Finally, EPT, Gantt and Lies claim that the trial court erred in granting the directed verdict on their counterclaim for tortious interference with business relations.

Georgia recognizes a cause of action where one maliciously and wrongfully and with intent to injure, harms the business of another. *Bodge v. Salesworld*, 154 Ga. App. 65 (267 SE2d 505) (1980); *NAACP v. Overstreet*, 221 Ga. 16, 21 (142 SE2d 816) (1965). Here, there was evidence from which a jury could have found that PCS both intended and did harm EPT's business and the direction of the verdict was improper.

*Judgment affirmed in part, reversed in part. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JUNE 11, 1991.

Remler, Koski & Near, Albert N. Remler, Robert C. Koski, Middleton & Anderson, Robert H. Benfield, Jr., for appellants.
Lawrence E. Burke, B. Glenn Johnson, for appellee.