## A05A1239. SOMMERS COMPANY v. MOORE et al.
### (621 SE2d 789)

MILLER, Judge.

Sommers Company (Sommers) sued Lanier's Car Care Center, Inc. (Lanier Corporation), Jack R. Lanier, Jr., and Sherrie J. Lanier for breach of contract. Sommers amended its complaint to add Charles H. Moore, Jr., and Charles H. Moore, Inc. as defendants (the Moore defendants) and sued them for tortious interference with contractual and business relations. The trial court granted the Moore defendants' motion for summary judgment on Sommers's tortious interference claims, and Sommers appeals. We affirm for the reasons set forth below.

"On appeal from the grant of summary judgment this Court conducts a de novo review of the evidence to determine whether there is a genuine issue of material fact and whether the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law." (Citations omitted.) *Youngblood v. Gwinnett Rockdale Newton Community Svc. Bd.*, 273 Ga. 715, 717-718 (4) (545 SE2d 875) (2001).

So viewed, the evidence shows that in 1992 Jack Lanier bought an Exxon-branded service station. In 1993, he began operating the service station business through Lanier Corporation. In February 1995, Lanier Corporation and Sommers entered into a ten-year-term agreement (the gasoline supply contract), pursuant to which Lanier Corporation agreed to buy gasoline from Sommers for resale. The gasoline supply contract did not expressly require Lanier Corporation to operate a retail gasoline business for the duration of the contract, nor was Lanier expressly prohibited from selling or leasing the underlying property to a third party. Lanier Corporation purchased gasoline from Sommers until July 2000, when Lanier Corporation ceased conducting business on the property.

In January or February 2000, Lanier told Charles Moore, a gasoline supplier, that Lanier intended to sell his service station property and that he had discussed a sale with "a couple other suppliers," who had shown interest in the property. Moore offered to lease the property from Lanier, and during their discussions Lanier told Moore about the gasoline supply contract with Sommers.

On August 1, 2000, Lanier leased the property to Henry C. Boykin, who then assigned the lease to Moore.[1] Boykin signed the lease and lease assignment at Moore's request and never met Lanier. The lease assignment from Boykin to Moore was recorded in the records of the Clerk of the Superior Court of Chatham County.

---

[1] Moore claims Boykin was used to facilitate a tax-free exchange.

The service station business closed from August 2000 to January 2001. During this time, Moore spent $150,000 renovating the station, and Moore then sub-leased the business to Lanier's wife, Sherrie. Sherrie Lanier and Jack Lanier also contracted to purchase gasoline from Moore. In January 2001, the service station re-opened under the Amoco brand. Sherrie Lanier subsequently assigned the rights under her lease with Moore to a third party, effective January 1, 2002, after the Laniers indicated to Moore that they wanted to get out of the business.

Sommers claims the trial court erred by granting summary judgment to the Moore defendants on Sommers's claims for tortious interference with contractual and business relations. Specifically, Sommers contends that the Moore defendants wrongfully interfered with the gasoline supply contract and the business relationship between Sommers and Lanier Corporation. We disagree.

> The elements of tortious interference with contractual relations, business relations, or potential business relations are: (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.

(Citations omitted.) *Dalton Diversified, Inc. v. AmSouth Bank*, 270 Ga. App. 203, 208-209 (4) (a) (605 SE2d 892) (2004). In this context, "fair competition is always legal." (Citation and punctuation omitted.) *Bacon v. Volvo Svc. Center*, 266 Ga. App. 543, 545 (2) (597 SE2d 440) (2004).

When Moore leased the service station property from Lanier the ancillary effect of the transaction was to interrupt sales under the gasoline supply contract and to terminate the business relationship between Lanier Corporation and Sommers. This does not mean, however, that Moore's actions were tortious. See *Forehand v. Perlis Realty Co.*, 198 Ga. App. 165, 166-167 (400 SE2d 644) (1990) (where two competitors were in the business of leasing space to commercial businesses, competitor did not tortiously interfere with a lease contract by inducing lessee to relocate its business where competitor was only interested in fair competition); *Architectural Mfg. Co. v. Airotec, Inc.*, 119 Ga. App. 245, 248-249 (166 SE2d 744) (1969) (merely to persuade a person to break his contract may not be wrongful in law or fact, but if the persuasion is used for the indirect purpose of

injuring the plaintiff it is actionable). "Improper actions constitute conduct wrongful in itself; thus, improper conduct means wrongful action that generally involves predatory tactics such as physical violence, fraud or misrepresentation, defamation, use of confidential information, abusive civil suits, and unwarranted criminal prosecutions." (Punctuation omitted.) *Disaster Svcs. v. ERC Partnership*, 228 Ga. App. 739, 741-742 (492 SE2d 526) (1997). We conclude that Sommers failed to show evidence that Moore acted improperly.

Sommers questions the legitimacy of Moore's transaction with Lanier because the property was initially leased to Boykin and then to Moore, and because the business was subsequently subleased by Moore to Sherrie Lanier. There is no evidence, however, that these transactions were fraudulent. Rather, the evidence shows the transactions were motivated by legitimate business interests. See *Halverson v. Murzynski*, 226 Ga. App. 276, 277 (1) (487 SE2d 19) (1997) (it is generally held that no liability for procuring a breach of contract exists where the breach is caused by the exercise of business judgment).

The lease between Lanier and Moore provided for a $150,000 initial payment by Moore and substantial periodic rent payments over a six-year initial term, renewable for five consecutive five-year renewal periods at the lessee's option. Moreover, Moore was granted virtually unlimited control over business operations on the property. Consistent with his rights under the lease, Moore deposed that "I could do anything I wanted to do with [the leased property]. . . . I mean I could put a McDonald's there or I could sell gasoline."

Moore was not obligated to sublease the business to Sherrie Lanier, as Moore had control over the business operations on the property, and Moore renovated the property before subleasing it to Sherrie Lanier for a different term and rent, and with other material provisions that were different from the terms in the lease between Jack Lanier and Moore. Although Boykin was used as an intermediary, Boykin's involvement did not change the substance of the lease for Lanier or Moore, nor did the parties try to hide the nature of the transaction, as indicated by the recording of the lease assignment to Moore in the public records.

There is further no evidence that Moore acted improperly in inducing Lanier to enter into the lease with him. Sommers argues that Moore did not engage in fair competition because he made false representations to Lanier and Sommers. In particular, Sommers contends that Moore represented to Lanier that Moore would work out an agreement with Sommers to resolve the gas supply contract issue. However, the evidence pointed to by Sommers only shows that, before signing the lease, Moore told Lanier that Moore would "discuss [the gas supply contract] with Mr. Sommers." After Moore occupied

the property, Moore told Lanier that he "had spoke[n] to Jackie [Sommers]." A few weeks later, Moore told Lanier that Moore was not buying gasoline from Sommers, and Lanier understood that to mean Moore and Sommers had been unable to reach an agreement. We find no evidence to support Sommers's claim that Moore made false representations to Lanier to induce Lanier to end Lanier Corporation's contractual and business relationship with Sommers.

Sommers further points to Jackie Sommers's testimony that Moore promised to pay Sommers a commission of one and one-half cents for each gallon of gasoline sold from the property during the remaining years of the gasoline supply contract and to pay certain "incentive money" Sommers owed Exxon if the station was re-branded, a promise Moore never fulfilled. Moore's alleged promise to Sommers, however, is not an example of a "predatory tactic," such as fraud. *Disaster Svcs.*, supra, 228 Ga. App. at 741-742. See, e.g., *Equifax, Inc. v. 1600 Peachtree, L.L.C.*, 268 Ga. App. 186, 195-196 (601 SE2d 519) (2004) (mere failure to perform promise to act in future is not fraud). Furthermore, Sommers was not justified in making any decision with regard to its business relationship with Lanier based on Moore's oral promise. See OCGA § 13-5-30 (2), (5) (enumerating agreements required to be in writing).

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED SEPTEMBER 26, 2005.

*Oliver, Maner & Gray, Timothy D. Roberts*, for appellant.
*Ranitz, Mahoney, Mahoney & Moss, Thomas J. Mahoney, Jr., Draughn B. Whitehead*, for appellees.