A06A2249. WALKER COUNTY v. TRI-STATE CREMATORY et al.
(643 SE2d 324)

BERNES, Judge.
After the discovery and removal of unburied and decayed bodies at the Tri-State Crematory, Walker County brought this lawsuit against the owners and operators of the crematorium and against the funeral homes and funeral directors who sent human remains there. Asserting causes of action for negligence and public nuisance, Walker County seeks to recover the expenses it incurred in recovering, identifying, and properly disposing of the human remains discovered at the crematorium property, as well as punitive damages and attorney fees and costs. Following our grant of its application for

interlocutory appeal, Walker County challenges the trial court's order dismissing its amended complaint for failure to state a claim upon which relief could be granted. Because we conclude that Walker County's claims are barred by the free public services doctrine, we affirm.

OCGA § 9-11-12 (b) (6) provides that an action can be dismissed upon the merits where the complaint "[f]ail[s] to state a claim upon which relief can be granted." Dismissal is appropriate "only where a complaint shows with certainty that the plaintiff would not be entitled to relief under any state of facts that could be proven in support of his claim." (Citation and punctuation omitted.) *Joseph H. King, Jr., P.C. v. Lessinger*, 276 Ga. App. 145, 146 (622 SE2d 381) (2005). Finally, "we review the dismissal de novo, construing the complaint's allegations and all possible inferences therefrom in favor of the plaintiff." (Citation and footnote omitted.) *Daly v. Mueller*, 279 Ga. App. 168 (630 SE2d 799) (2006).

So viewed, the allegations of the complaint show that Walker County discovered hundreds of human bodies in an uncremated, decayed state that "were stacked, stored, dumped, buried in septic tanks, commingled in common graves and scattered about the service of the property" of Tri-State Crematory. In lieu of filing an abatement action under OCGA § 41-2-1 et seq., Walker County established a crisis center, morgue, and other facilities and took steps to recover, move, store, and identify human remains and provide for their burial and proper disposition.

Walker County subsequently commenced the instant action against the Tri-State Crematory and its owners and operators. The county also sued multiple funeral homes and their funeral directors who sent human remains to Tri-State Crematory and received back ashes purported to be human remains but which turned out to contain "non-human matter such as Portland cement, wood ash, potting soil, porcine remains and other foreign objects."

In its complaint as amended, Walker County alleged multiple negligence claims and further alleged that the presence of uncremated human remains scattered in, on, or around the crematorium property constituted a public nuisance for which all the defendants could be held liable. Based on these allegations, Walker County sought to recover the $2 million it spent on equipment, facilities, and

> [e]mployee labor costs for employees diverted from regular duties for the purpose of abating a public nuisance, protecting properties, providing security, recovering, moving, storing and identifying bodies, record keeping in connection with the same, family notification, burial and disposition of identified and unidentified remains, actual salaries, [and]

fringe benefits for dedicated [c]ounty employees from the Sheriff's Department, Fire Department, Civic Center staff, [and] EOC staff. Walker County also sought punitive damages and attorney fees and costs.

The defendants moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted. The defendants asserted that Walker County's claims were barred by the free public services doctrine; the economic loss rule; the voluntary payment doctrine; the applicable statute of limitation; lack of standing; and estoppel. The funeral home defendants further contended that the claims against them should be dismissed because they owed no duty of care to Walker County. In a summary order, the trial court granted all the defendants' motions to dismiss for failure to state a claim.[1]

1. Walker County contends that the free public services doctrine, as enunciated in *Torres v. Putnam County*, 246 Ga. App. 544 (541 SE2d 133) (2000), does not bar its negligence and public nuisance claims. In *Torres*, Putnam County brought suit against business operators who allegedly were committing several unlawful acts on their property, including "occupation of buildings without obtaining inspections or certificates of occupancy, zoning violations, building code, safety, and fire violations, operation of [a] business[ ] in a residential zone, and the like." Id. at 548. The county sought injunctive relief prohibiting nonconforming use of the property, but also sought tort damages for expenses incurred by the county in "sending the Building Inspector and the Sheriff out" to the property. (Punctuation omitted.) Id. Affirming the dismissal of the county's tort damages claim, this Court emphasized that the only injury for which the county was seeking recompense was money spent "enforcing its laws and protecting its citizens." Id. Citing with approval to cases from other jurisdictions that have adopted the free public services doctrine, this Court concluded that the county had failed to allege that it suffered a type of injury compensable under tort law. Id.

Based on the reasoning and holding of *Torres*, we conclude that Georgia, like many jurisdictions,[2] has adopted the common-law free

---

[1] After the defendants filed their motions to dismiss Walker County's amended complaint, Walker County filed a second amended complaint to add a new claim under the Georgia Hazardous Site Response Act, OCGA § 12-8-90 et seq. ("GHSRA"). The trial court's order did not address or rule upon the second amended complaint. As such, all parties agree on appeal that the GHSRA claim is not before this Court at this time. See *Pyle v. City of Cedartown*, 240 Ga. App. 445, 448 (3) (524 SE2d 7) (1999) ("This court is for the correction of errors, and where the trial court has not ruled on an issue, we will not address it.").

[2] The seminal case in this area of the law is *City of Flagstaff v. Atchison, Topeka & Santa Fe R. Co.*, 719 F2d 322, 323-324 (9th Cir. 1983), where the Ninth Circuit held that the City of

public services doctrine. Stated succinctly, the doctrine provides that absent specific statutory authorization or damage to government-owned property, a county cannot recover the costs of carrying out public services from a tortfeasor whose conduct caused the need for the services. See *Dist. of Columbia v. Air Florida, Inc.*, 750 F2d 1077, 1080 (D.C. Cir. 1984); *City of Flagstaff v. Atchison, Topeka & Santa Fe R. Co.*, 719 F2d 322, 323-324 (9th Cir. 1983); *Baker v. Smith & Wesson Corp.*, No. Civ. A. 99C-09-283-FS, 2002 WL 31741522, at *4-5 (Del. Super. Ct. Nov. 27, 2002); *Koch v. Consolidated Edison Co. of N.Y.*, 468 NE2d 1, 8 (N.Y. 1984); *Bd. of Supervisors of Fairfax County v. U. S. Home Corp.*, No. 85225, 1989 WL 646518, at *1-2 (Va. Cir. Ct. Aug. 14, 1989). See also *Torres*, 246 Ga. App. 544. The primary rationale behind the doctrine is "that state legislatures establish local governments to provide core services for the public and pay for these services by spreading the costs to all citizens through taxation." *Baker*, 2002 WL 31741522, at *5. See also *City of Flagstaff*, 719 F2d at 323-324. And, any decision over whether to reallocate how those costs are spread necessarily implicates fiscal policy, a matter best left to "the legislature and its public deliberative processes, rather than the court." (Citation omitted.) Id. at 324.

Applying these principles to the case at hand, we note that Walker County seeks to recover the facility, equipment, and employment costs associated with recovering, identifying, and properly disposing of the human remains discovered at the crematorium property. As such, Walker County clearly is not seeking to recover costs associated with injury to its own property, but rather the costs it incurred in performing the public services of cleaning up the crematorium site and providing disaster relief. See generally Ga. Const. of 1983, Art. I, Sec. I, Par. II ("Protection to person and property is the paramount duty of government and shall be impartial and complete.").

Nor has Walker County pointed to any specific statute authorizing the recovery of such costs as compensatory damages in a tort action alleging negligence or public nuisance claims. While Walker County cites to its general authority under OCGA § 36-1-3 to "sue or be sued in any court," this Court in *Torres* specifically considered that statute and rejected it as a basis for the county's tort claims for damages. 246 Ga. App. at 547-548. Walker County also cites to OCGA § 31-21-26, which provides in part that "[n]either the state, county, municipality, nor officers thereof shall be placed at any expense by

Flagstaff could not recover the fire, police, and other emergency costs it incurred in evacuating a large area of the city after railroad cars containing petroleum derailed. See also *Dist. of Columbia v. Air Florida, Inc.*, 750 F2d 1077, 1080 (D.C. Cir. 1984); *Koch v. Consolidated Edison Co. of N.Y.*, 468 NE2d 1, 8 (N.Y. 1984) (citing cases).

reason of delivery or distribution of bodies." However, even if OCGA § 31-21-26 could be construed as providing a county an affirmative right to sue and recover costs associated with the delivery or distribution of certain dead bodies, the statute — when read in context with surrounding provisions — refers to the delivery or distribution of unclaimed bodies for purposes of medical research, a situation clearly different from the one here. Finally, Walker County cites two statutory provisions authorizing liens on private property on which public nuisances are found and abated (see OCGA §§ 31-5-10 (d); 41-2-9 (a) (7)), but those provisions do not separately and specifically authorize Walker County to do what it seeks to do here — obtain compensatory damages in a tort action as a means of redress for abating a public nuisance.

Under these circumstances, we conclude that Walker County's tort claims are barred by the free public services doctrine. See *Torres*, 246 Ga. App. at 548. See also *Air Florida*, 750 F2d at 1080; *City of Flagstaff*, 719 F2d at 323-324. In reaching this conclusion, we reject Walker County's argument that this Court in *Torres* intended to adopt a more restrictive interpretation of the free public services doctrine than other jurisdictions. In *Torres*, the Court noted that Georgia law defines a tort in part as an "unlawful violation of a private legal right other than a mere breach of contract." (Punctuation omitted.) 246 Ga. App. at 548, quoting OCGA § 51-1-1. Then, in discussing the costs incurred by the county in sending out the building inspector and sheriff to the property, the Court pointed out that there was "no authority for the position that such an expenditure of public funds in performing a public duty required by law implicates any private right," and, therefore, no basis for a tort claim. (Citation and footnote omitted.) Id.

Based on this language, Walker County contends that *Torres* limited application of the free public services doctrine to situations where the county was carrying out a duty *required by law* rather than a discretionary governmental function. As such, Walker County argues that because it did not have a statutory duty mandating that it clean up the crematorium site, the present case is distinguishable from *Torres*, and the free public services doctrine should not apply.

We are unpersuaded that the language in *Torres* referring to a "public duty required by law," when read in context, was intended to be talismanic in future cases. Rather, the controlling language is found in the preceding sentence of the opinion, where the Court emphasized more generally that the county was only seeking to recover costs associated with "enforcing its laws and protecting its citizens." *Torres*, 246 Ga. App. at 548. The same rationale underlying the free public services doctrine applies, irrespective of whether the

county's decision to provide the public service was statutorily mandated or discretionary. In either case, the question of whether the costs of providing the public service should be spread among all taxpayers or reallocated in some other manner necessarily implicates fiscal policy, and, therefore, falls within the special purview of the legislature, not this Court. See *City of Flagstaff*, 719 F2d at 324; *Baker*, 2002 WL 31741522, at *5. It follows that whether or not the carrying out of a public service was mandatory or discretionary should make no substantive difference to the analysis.

We likewise reject Walker County's argument that there should be an exception to the free public services doctrine when the costs are incurred as part of the abatement of a public nuisance. If such an exception were recognized, it would be the exception that swallows the rule, since many expenditures for public services could be recharacterized by skillful litigants as expenses incurred in abating a public nuisance. We decline to adopt such a "murky" exception that "could give rise to substantial litigation." *Gen. Elec. Co. v. Lowe's Home Centers*, 279 Ga. 77, 80 (2) (608 SE2d 636) (2005).

Furthermore, as previously noted, the General Assembly has created a statutory method for counties to obtain liens on private property on which public nuisances are found and abated. See OCGA §§ 41-2-7 (b); 41-2-9 (a) (7), (b). See also OCGA § 31-5-10 (d) (providing that if Department of Human Resources or certain county boards of health abate a public nuisance injurious to the public health, they are entitled to a lien on the formerly contaminated property). The statutory framework set forth in Title 41 provides a means for counties to recoup the costs of abating a public nuisance, albeit indirectly, through obtaining a lien and instituting an enforcement proceeding. Given this available statutory remedy, we see no pressing need for carving out a special exception to the free public services doctrine for public nuisance cases, and thereby potentially opening the litigation floodgates as a result of such an ambiguous exception. See *Baker*, 2002 WL 31741522, at *6 (declining to recognize an exception to the free public services doctrine for abating an ongoing public nuisance); *Bd. of Supervisors of Fairfax County*, 1989 WL 646518, at *2 (declining to recognize an exception when the legislature had already created statutory remedies and concluding that a "[p]laintiff may not recover damages . . . merely by characterizing the results of the conduct as a nuisance") (citation and punctuation omitted). But see *James v. Arms Technology*, 820 A2d 27, 49 (N.J. Super. Ct. App. Div. 2003) (recognizing exception in public nuisance cases for repeated or continuous offenses).[3]

---

[3] In *City of Flagstaff*, the Ninth Circuit pointed out in dicta that some courts had recognized

For the foregoing reasons, we conclude that Walker County's negligence and public nuisance claims were barred by the free public services doctrine. Likewise, Walker County cannot prevail on its claims for punitive damages and attorney fees, since those claims could succeed only if Walker County succeeded on its underlying tort claims. See *Roofing Supply of Atlanta v. Forrest Homes,* 279 Ga. App. 504, 508 (4) (632 SE2d 161) (2006). Consequently, we affirm the trial court's order dismissing Walker County's amended complaint for failure to state a claim upon which relief could be granted. See *Gillis v. American Gen. Life &c. Ins. Co.,* 222 Ga. App. 891, 892 (476 SE2d 648) (1996) ("In the case sub judice, the order of the trial court does not recite the grounds upon which the motion to dismiss was sustained; however, if the judgment is authorized for any reason, it must be affirmed.") (citations and punctuation omitted).

2. Based on our conclusion in Division 1, we do not reach Walker County's remaining enumerations of error, which have been rendered moot.

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 7, 2007 — 

*Coppedge & Leman, Warren N. Coppedge, Jr., Joseph T. Leman, Joseph B. Evans, Larry B. Hill,* for appellant.

*Jenkins & Olson, Frank E. Jenkins III, Zirkle & Hoffman, Charles B. Zirkle, Jr., Goins, Carpenter, James & Lockett, Stuart F. James, Goodman, McGuffey, Lindsey & Johnson, Edward H. Lindsey, Jr., Robert A. Luskin, Warshauer, Poe & Thornton, Douglas C. Dumont,* for appellees.

an exception to the free public services doctrine for expenses incurred in abating a public nuisance. 719 F2d at 324. However, the cases cited by the Ninth Circuit are distinguishable from the present case in that they arose in the unique context of the federal common law of nuisance regarding interstate waterways or also involved a state statute authorizing recovery of the damages at issue. See *Town of East Troy v. Soo Line R. Co.,* 653 F2d 1123, 1127 (7th Cir. 1980) (statutory authorization); *City of Evansville v. Kentucky Liquid Recycling,* 604 F2d 1008, 1017-1019 (7th Cir. 1979) (federal common law); *United States v. Illinois Terminal R. Co.,* 501 FSupp. 18, 21 (E.D. Mo. 1980) (same).