## A08A0625, A08A0626. GREAT SOUTHWEST EXPRESS COMPANY, INC. v. GREAT AMERICAN INSURANCE COMPANY OF NEW YORK; and vice versa.

(665 SE2d 878)

BERNES, Judge.

These companion appeals arise out of a declaratory judgment action filed by Great American Insurance Company of New York contesting coverage under an insurance policy issued to Great Southwest Express Company. In Case No. A08A0625, Southwest appeals from the trial court's grant of partial summary judgment to Great American on Southwest's counterclaims for tortious interference with contract, lost profits, and punitive damages. In Case No. A08A0626, Great American appeals from the trial court's denial of summary judgment on Southwest's counterclaim for bad faith refusal to pay pursuant to OCGA § 33-4-6. For the reasons that follow, we affirm in both cases.

On motion for summary judgment, it is the movant's burden to show that no genuine issue of material fact is at issue and that he is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). The movant may discharge such burden by reference to affidavits, depositions, and other documentary evidence of record showing no evidence in support of the nonmovant's case. Id. After the movant discharges his burden, the nonmovant cannot rest on his pleadings, but instead must come forward with evidence establishing a triable issue. OCGA § 9-11-56 (e); *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). We review the trial court's decision on motion for summary judgment de novo, "viewing the evidence in the light most favorable to the nonmovant, to determine whether a genuine issue of material fact exists and whether the moving party was entitled to judgment as a matter of law. [Cit.]" *Gilhuly v. Dockery*, 273 Ga. App. 418, 418-419 (615 SE2d 237) (2005).

So viewed, the evidence showed that Southwest was a common carrier whose primary customer was Goodyear Tire and Rubber Company. In 1998, Southwest obtained an insurance policy from Great American, which included coverage for the theft of goods taken from Southwest's vehicles.

At some point, Great American issued an endorsement amending Southwest's policy to include an unattended vehicle exclusion that would limit its coverage on claims related to theft.[1] The amendment purported to take effect during the relevant policy

---

[1] The endorsement purporting to add this exclusion states that "we will not pay for 'loss' by theft of the following listed covered property [including tires] from any 'unattended' vehicle that you own, lease or operate. 'Unattended' means a vehicle without a person on or in the vehicle, whose duty is to safeguard the vehicle and its cargo or covered property."

period from November 2001 to November 2002. The circumstances surrounding Great American's amendment are heavily disputed by the parties, and genuine issues of fact remain as to whether Great American followed the correct statutory and contractual procedures necessary to effect a change to the policy.

Over the weekend of February 24, 2002, three trailers loaded with Goodyear tires were parked on the premises of Southwest. Sometime during that weekend, the three trailers with their contents were stolen from the premises.[2]

Southwest filed a claim with Great American for the February loss and, after Great American denied coverage under the unattended vehicle exclusion, a dispute between the parties arose. In May 2002, Southwest advised Great American that one of its shippers (Goodyear) was holding up payment of freight bills pending settlement of the claim. Also in May 2002, counsel for Southwest made a demand for payment on Great American and advised it that its refusal to resolve the claim was adversely affecting Southwest's reputation and business relationship with Goodyear. Counsel for Southwest again informed Great American in October 2002 that its failure to pay was harming Southwest's reputation and its business relationship with Goodyear.

In November 2002, Great American filed a petition for declaratory judgment setting forth its contention that the unattended vehicle exclusion precluded coverage of Southwest's claims. In November 2003, Goodyear terminated its business relationship with Southwest. Southwest alleges that as a result, it was forced to close. Southwest then asserted the counterclaims at issue in these companion appeals.

## Case No. A08A0625

1. The trial court correctly granted summary judgment in favor of Great American on Southwest's counterclaim for tortious interference with contract. Southwest's allegations, even if proven at trial, would fail to establish the essential element of direct inducement of adverse action by a third party. See *Sandifer v. Long Investors*, 211 Ga. App. 757, 760 (3) (440 SE2d 479) (1994). Southwest contends that Great American's wrongful conduct consisted of its alleged failure to abide by the insurance policy, accept coverage, and settle Southwest's claim, with the ultimate consequence that Goodyear discontinued its business relationship with Southwest. In

---

[2] Over the weekend of September 5, 2002, three more trailers containing Goodyear tires were stolen from Southwest's gated premises. The coverage of this loss is also being disputed by the parties.

other words, Southwest alleges that Great American's unreasonable performance under the insurance policy culminated in Goodyear not entering into or continuing its contractual relationship with Southwest. Such an allegation is insufficient to prove the essential element of direct inducement. See id. See also *St. Mary's Hosp. of Athens v. Radiology Professional Corp.*, 205 Ga. App. 121, 124-125 (2) (421 SE2d 731) (1992) (physical precedent only).

> Although a claim for tortious interference is not limited to conduct that causes a breach of a claimant's contract with a third party, but also may be asserted for conduct that makes the performance of that contract more difficult, nevertheless in such a circumstance the claimant still must prove that the defendant directly induced adverse behavior by the third party with respect to the third party's contract with the claimant, not merely that the defendant breached its contract with the claimant and that an element of damage resulting from that breach was the impairment of the claimant's performance of its contract with the third party.

(Citation and punctuation omitted.) *Sandifer*, 211 Ga. App. at 760 (3). See also *HLD Enterprises v. Michelin North America*, 2004 WL 2095739, at *3-4 (III) (C) (N.D. Ga. 2004); *St. Mary's Hosp. of Athens*, 205 Ga. App. at 125 (2). Accordingly, Southwest's counterclaim for tortious interference with contract failed as a matter of law.

The dissent argues that Southwest's counterclaim should be construed broadly to also assert a claim for tortious interference with business relations. But even if Southwest has alleged such a counterclaim, it cannot succeed for the same reason that Southwest has failed to come forward with sufficient evidence to show that the essential element of inducement has been met. See *Renden, Inc. v. Liberty Real Estate Ltd. Partnership III*, 213 Ga. App. 333, 335 (2) (b) (444 SE2d 814) (1994) (an "essential element of tortious interference with business relations is that the alleged tortfeasor induced a third party or parties not to enter into or continue a business relationship with the plaintiff") (citation and punctuation omitted). See also *Intl. Telecommunications Exchange Corp. v. MCI Telecommunications Corp.*, 892 FSupp. 1520, 1543 (V) (N.D. Ga. 1995) (citing to *St. Mary's Hosp. of Athens* and holding that a claim for tortious interference with business relations does not arise where the defendant simply breaches its contract to the plaintiff, with the ultimate consequence that the plaintiff loses business from a third party).

The dissent also contends that the trial court's grant of summary judgment on the tortious interference counterclaim was premature because the trial court has not yet ruled on whether the

insurance policy provided coverage for the theft from Southwest's trucks. However, the trial court was not required to resolve whether the insurance policy provided coverage as a condition precedent to ruling on the motion for summary judgment brought by Great American. Summary judgment is appropriate if there is a lack of evidence as to any *one* essential element of a party's claim or affirmative defense. *Sturdivant v. Moore*, 282 Ga. App. 863, 865 (640 SE2d 367) (2006). If one essential element cannot be proven, "[a]ll of the other disputes of fact are rendered immaterial." (Footnote omitted.) *Dozier Crane &c. v. Gibson*, 284 Ga. App. 496, 497 (644 SE2d 333) (2007). Where, as here, the insurer raises legal arguments for why summary judgment should be granted on a claim that are not dependent on whether the policy provides coverage, there is no reason that the trial court should be required to sua sponte resolve the coverage issue before ruling on the motion.

The dissent relies upon *Southern Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 676-677 (2) (605 SE2d 27) (2004) to support its decision to vacate and remand, but that case is inapposite. In *Southern Guar. Ins. Co.*, the Supreme Court of Georgia simply remanded the case for a determination of whether insurance coverage existed, *after* first ruling that the trial court erred in concluding that the terms of a settlement agreement relieved the insurer of any obligation it may have had to pay the insured's claim. The opinion in no way suggests that the trial court should have first resolved the coverage issue before ruling on the settlement issue. Consequently, it is appropriate for this Court to address the substance of the trial court's grant of summary judgment in favor of Great American on the tortious interference counterclaim.

2. The trial court was also correct in granting Great American summary judgment on Southwest's counterclaims for lost profits and punitive damages. Southwest argues that its damage claims are predicated on both its counterclaim for bad faith refusal to pay pursuant to OCGA § 33-4-6 and its counterclaim for tortious interference with contract.[3] But "[t]he penalties contained in OCGA § 33-4-6 are the exclusive remedies for an insurer's bad faith refusal to pay insurance proceeds." *Howell v. Southern Heritage Ins. Co.*, 214 Ga. App. 536, 537 (2) (448 SE2d 275) (1994). See *McCall v. Allstate Ins. Co.*, 251 Ga. 869, 871-872 (2) (310 SE2d 513) (1984) ("[W]here the General Assembly has provided a specific procedure

---

[3] Southwest contends that its claim for refusal to pay also arises under the common law of tort. However, absent some special relationship beyond the relation of insurer and insured, OCGA § 33-4-6 provides the exclusive remedy. See *Globe Life &c. Ins. Co. v. Ogden*, 182 Ga. App. 803, 804-805 (1) (357 SE2d 276) (1987). See also *Garrett v. Unum Life Ins. Co. of America*, 427 FSupp.2d 1158, 1162 (3) (M.D. Ga. 2005); *Tate v. Aetna Cas. &c. Co.*, 149 Ga. App. 123, 125 (253 SE2d 775) (1979). No such relationship has been shown here.

and a limited penalty for noncompliance with a specific enact-ment . . . , the specific procedure and limited penalty were intended by the General Assembly to be the exclusive procedure and penalty, and recovery under general penalty provisions will not be allowed."); *United Svcs. Automobile Assn. v. Carroll*, 226 Ga. App. 144, 149 (5) (486 SE2d 613) (1997) (damages for bad faith denial of insurance proceeds cannot be recovered under general contract or tort law).

Consequently, Southwest's counterclaims for lost profits and punitive damages are necessarily predicated on its tortious interfer-ence counterclaim. Because Southwest cannot succeed on its under-lying tort counterclaim, it likewise cannot succeed on its counter-claims for lost profits and punitive damages. See, e.g., *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 40 (1) (643 SE2d 324) (2007). It follows that the grant of summary judgment on those damages counterclaims was proper as well.

### Case No. A08A0626

3. Finally, the trial court properly denied summary judgment to Great American on Southwest's counterclaim under OCGA § 33-4-6 for bad faith refusal to pay. In moving for summary judgment, Great American argued that it was insulated from the claim as a matter of law because it entered into a reservation of rights and filed a petition for declaratory judgment. Contrary to Great American's assertion, however, the mere filing of a declaratory judgment action does not in and of itself absolve an insurer from being subject to a bad faith penalty under OCGA § 33-4-6. *State Farm Fire & Cas. Co. v. Gosdin*, 147 Ga. App. 156 (2) (248 SE2d 216) (1978). Rather, the question of good or bad faith of the insurer is ordinarily for the jury. *Bituminous Cas. Corp. v. Mowery*, 145 Ga. App. 45, 53 (2) (244 SE2d 573) (1978). For this reason, the trial court did not err in denying Great American's motion. See id. at 53-54; *State Farm Mut. Ins. Co. v. Acheson*, 182 Ga. App. 218, 219-220 (3) (355 SE2d 128) (1987).

*Judgments affirmed. Barnes, C. J., Johnson, P. J., Blackburn, P. J., and Andrews, J., concur. Ruffin, P. J., and Phipps, J., concur in part and dissent in part.*

RUFFIN, Presiding Judge, concurring in part and dissenting in part.

Because I do not agree with the majority that the tortious interference claim can be resolved against Southwest as a matter of law, I am compelled to dissent to Divisions 1 and 2 of the majority opinion.

Since the Civil Practice Act has been enacted, it is no longer necessary that a complaint be perfect in form or set out each issue

with particularity; rather, a complaint must only place the defendant on notice of the claim.[4] Here, in its amended complaint, Southwest alleged "that prior to [Great American's] wrongful and tortious acts, [Southwest] had an ongoing business relationship with Goodyear Tire and Rubber Company, which resulted in revenue to Southwest . . . of approximately $2,500,000.00 per year" and that this relationship was "ultimately terminated due to the problems created by Great American." Although the complaint specifically alleges a claim for "tortious interference with contractual relations," I believe that the broad language also encompasses a claim for tortious interference with business relations. Even though this claim was not *explicitly* set forth in the complaint, the complaint may nonetheless be reasonably construed under the liberal pleading requirements of the Civil Practice Act to include this claim.[5]

We have repeatedly held that the elements of this hybrid tortious interference claim are as follows:

> (1) improper action or wrongful conduct by the defendant without privilege; (2) the defendant acted purposely and with malice with the intent to injure; (3) the defendant induced a breach of contractual obligations *or caused a party or third parties to discontinue or fail to enter into an anticipated business relationship with the plaintiff*; and (4) the defendant's tortious conduct proximately caused damage to the plaintiff.[6]

Under this broader language, I do not believe that we can say, as a matter of law, that Southwest is unable to sustain a tortious interference claim against Great American.[7] Summary judgment is appropriate only if there are no genuine issues of material fact and the moving party has shown entitlement to judgment as a matter of law.[8] Here, the evidence shows that, after having insured Southwest

---

[4] See *Hicks v. McGee*, 283 Ga. App. 678, 680 (2) (b) (642 SE2d 379) (2007).

[5] See *Dwyer v. McCoy*, 236 Ga. App. 326, 328 (5) (512 SE2d 70) (1999).

[6] (Emphasis supplied; punctuation omitted.) *Kirkland v. Tamplin*, 285 Ga. App. 241, 243 (1) (645 SE2d 653) (2007); see also *J. Kinson Cook of Ga., Inc. v. Heery/Mitchell*, 284 Ga. App. 552, 556-557 (b) (644 SE2d 440) (2007); *Boeing Co. v. Blane Intl. Group*, 276 Ga. App. 672, 675 (1) (624 SE2d 227) (2005); *Sommers Co. v. Moore*, 275 Ga. App. 604, 605 (621 SE2d 789) (2005).

[7] See *Gantt v. Patient Communications Systems*, 200 Ga. App. 35, 40 (4) (406 SE2d 796) (1991) ("Georgia recognizes a cause of action where one maliciously and wrongfully and with intent to injure, harms the business of another."); *Chong v. Reebaa Constr. Co.*, 284 Ga. App. 830, 834-837 (4) (a), (b) (645 SE2d 47) (2007) (trial court erroneously directed verdict to defendant on plaintiff's tortious interference claim where evidence showed that defendant's statement that the plaintiff was "a liar and a crook" resulted in business losses for plaintiff), rev'd on other grounds, *Reebaa Constr. Co. v. Chong*, 283 Ga. 222 (657 SE2d 826) (2008).

[8] See *Reny v. Sneed*, 285 Ga. App. 722 (647 SE2d 379) (2007).

for several years, Great American unilaterally decided to modify the insurance policy to exclude losses caused by theft from unattended vehicles. Although OCGA § 33-24-47 (b) requires an insurer seeking to limit or restrict coverage to notify the insured of the proposed change, Great American apparently did not do so. Indeed, there is some evidence that Southwest never received a copy of the renewal policy until after Great American denied coverage. After Southwest sustained several thefts of Goodyear products from unattended trailers, it attempted to collect from Great American, only to learn that Great American was denying coverage. Ultimately, Southwest lost Goodyear as its customer, forcing Southwest to cease operations.

Given these facts, I believe that the trial court's grant of summary judgment was premature, and that this issue is not yet ripe for appellate review. The crux of this case is not whether Great American induced or caused Goodyear to end its business relationship with Great American, but whether Great American acted wrongly in denying coverage for the thefts from Southwest's trucks. And the trial court has yet to rule on Great American's declaratory judgment action to determine coverage, which may be determinative of the tortious interference claim. Under these circumstances, the appropriate course of action is to vacate the trial court's grant of partial summary judgment on the tortious interference claim and remand in order for the trial court to first rule on the coverage issue.[9] Accordingly, I dissent in part.

I am authorized to state that Judge Phipps joins in this dissent.

DECIDED JULY 16, 2008

*Miller, Cowart & Howe, Craig N. Cowart*, for appellant.
*Dennis, Corry, Porter & Smith, John D. Dixon, Michael W. Horst*, for appellee.

---

[9] See *Southern Guar. Ins. Co. v. Dowse*, 278 Ga. 674, 676 (2) (605 SE2d 27) (2004).