UNITED STATES of America,
Plaintiff-Appellee,

v.

The DENVER AND RIO GRANDE
WESTERN RAILROAD COMPANY,
Defendant-Appellant.

No. 75–1701.

United States Court of Appeals,
Tenth Circuit.

Argued and Submitted May 18, 1976.

Decided Jan. 11, 1977.

Carl Strass, Dept. of Justice, Washington, D. C. (Peter R. Taft, Asst. Atty. Gen., Washington, D. C., Glen R. Goodsell, Dept. of Justice, Washington, D. C., Ramon M. Child, U. S. Atty., Salt Lake City, Utah, on the brief), for plaintiff-appellee.

Alan L. Sullivan, Salt Lake City, Utah (Van Cott, Bagley, Cornwall & McCarthy, Salt Lake City, Utah, on the briefs), for defendant-appellant.

Before SETH and HOLLOWAY, Circuit Judges, and STANLEY, Senior District Judge.*

ARTHUR J. STANLEY, Jr., Senior District Judge.

This is an appeal from a judgment rendered in favor of the United States in an action to recover for fire damage to fifty-five acres of government land adjoining the

* Of the District of Kansas, sitting by designation.

appellant's right-of-way in Price Canyon, Utah. The case was tried to the court without a jury.

The trial court found that the appellant (the railroad) negligently allowed inflammable materials to accumulate along its right-of-way thereby creating a dangerous condition; that the fire was ignited by a yellow fusee at a point near a switchbox on the railroad track; and that the railroad failed to take reasonable and necessary measures to extinguish the fire and allowed it to spread from the right-of-way onto the adjoining land owned by the United States and supervised by the Bureau of Land Management. The court, although there was no direct testimony that the railroad company currently used yellow fusees, determined that the evidence, taken as a whole, established that "the railroad's negligence ignited the fire".

The appellant contends that the evidence does not support the findings of fact that the fire was ignited by the railroad or that it had allowed inflammable materials to accumulate along its right-of-way. The railroad also claims that the trial court erred in concluding, "that even absent a finding of the Railroad's responsibility for starting the fire, the Railroad was liable for damages from the fire by reason of its failure to maintain its right-of-way in a fire-safe condition"; and that it erred in its award of damages.

There was ample evidence to support the findings that the fire was started by a fusee along the railroad's right-of-way and that it spread to the government land, causing damage. While there was no direct evidence linking the actions of the railroad or its employees to the particular fusee which initiated the blaze, as the trial judge noted in his Memorandum Opinion, a finder of fact "deals only with probability, and that a greater or less probability, leading, on the whole, to a satisfactory conclusion, is all that can reasonably be required to establish controverted facts." 30 Am.Jur. *Evidence* § 1164 (1967). As has elsewhere been

stated, ". . . where fairminded men may draw different inferences from the evidence, the dispute may be resolved in a civil case by choosing what seems to be the most reasonable inference, and only where there is a complete absence of probative evidence to support the conclusion reached does a reversible error appear." 4 Jones on Evidence, Gard's 6th Ed. 305.

There was competent expert evidence that the fire was caused by the ignition of the yellow fusee; that the burnt-out fusee was found near a switchbox on the railroad's right-of-way; that it was the practice of brakemen to throw fusees along the track when a train was stopped or was switching; that the railroad, while it had not used yellow fusees on its main line for many years, did use them in its yards in foggy weather; and that no one else in the area used yellow fusees. There was other evidence, including photographs and slides, that inflammable materials described as litter, sticks, twigs, and dry grass, had accumulated on the right-of-way near the point where the burnt-out fusee was found. The trial judge reasoned from these facts that other possible causes of the fire were eliminated, leaving the railroad as the agency responsible for the fire.

Factual findings of the district court are not lightly to be set aside and where the evidence supports a conclusion either way the choice between two permissible views of the weight of the evidence is not "clearly erroneous" as the term is used in Rule 52(a), Fed.R.Civ.P. *United States v. Yellow Cab Co.,* 338 U.S. 338, 70 S.Ct. 177, 94 L.Ed. 150 (1949). The appellant has the burden to clearly demonstrate error in the findings and the burden is especially great where, as here, the findings are based primarily upon oral testimony so that the trial court has had the opportunity to observe the demeanor of the witnesses, to judge their credibility, and to weigh their testimony. *Snodgrass v. Nelson,* 503 F.2d 94 (8th Cir. 1974). The evidence viewed in the light most favorable to the appellee,

traced the course of the fire in unbroken sequence to the fusee. The facts were sufficient to give rise to the permissible inference that the fusee was lighted and discarded by the railroad's employees.

■ The appellant complains of the inclusion in the district court's Memorandum Opinion of the statement "the rule which imposes liability on an owner of land by reason of his negligence in failing to keep his premises safe from the accumulation of inflammable material thereon is enough to establish liability on the railroad under the facts established by the evidence presented at trial". The remainder of the paragraph in which the quoted statement appears is as follows: "This court, however, also believes that the evidence established that the railroad's agents or employees were negligent in igniting the fire." Elsewhere in the Memorandum Opinion the court said, "The testimony established the cause as the fusee. It was by the switchbox." and "The court concludes, based on the evidence presented at the trial, that the railroad's negligence ignited the fire." It is clear, when the Memorandum Opinion is read in its entirety, that the district court found that the railroad, by allowing the accumulation of combustible debris on its right-of-way, furnished a condition by which the direct cause, the ignition of the debris, was made possible. Competent evidence supports the finding. It is settled law that when two causes, one furnishing the condition giving rise to the occasion by which an injury is made possible, and the other a direct cause of the injury, the latter will be regarded as responsible for the result. 86 C.J.S. Torts § 30, quoted in *United States v. DeVane*, 306 F.2d 182 (5th Cir. 1962).

The appellant cites cases in which railroad companies were not held responsible for fire damage communicated to adjoining property in the absence of proof that acts of the railroad companies kindled the fire. The cases are inapposite. Here there *was* proof of direct causation. And see *Arnhold v. United States*, 284 F.2d 326 (9th Cir.

1960), *cert. denied*, 368 U.S. 876, 82 S.Ct. 122, 7 L.Ed.2d 76.

■ Reviewing the entire record we are not "left with the definite and firm conviction that a mistake has been committed". *Zenith Radio Corp. v. Hazeltine*, 395 U.S. 100, 123, 89 S.Ct. 1562, 1576, 23 L.Ed.2d 129 (1969). We conclude that the factual findings of the trial court on the liability issue should not be set aside as clearly erroneous.

The district court entered judgment in the amount of $32,817.85 and in its Memorandum Opinion broke that amount down into three categories:

| | |
|---|---|
| Suppression costs | $ 22,514.28 |
| Resource damages | 4,675.00 |
| Overhead or indirect costs | 5,628.57 |

The railroad challenges only the last two categories.

■ The Government, having invoked the jurisdiction of this court under 28 U.S.C.A. § 1345, stands in the same shoes as does a private party and, like any owner of real property, is entitled to be compensated for injuries to its property through the negligent acts of another. Like any plaintiff the Government had the burden of proving the fact of pecuniary damages by competent evidence furnishing a basis for their assessment in accordance with the measure of damages properly applicable.

The measure of damages necessarily varies according to circumstances. Here the area suffering fire damage consisted of fifty-five acres of nearly precipitous canyon walls. It was classified by the Government as "non-commercial forest land (land not capable of yielding wood products or commercial forest land withdrawn from timber use)". (Exhibits 3 and 34). No timber cutting permits had ever been issued and there was no evidence that it had ever been commercially grazed. The damage was not permanent although restoration of the tract to its original condition by re-establishing de-

stroyed vegetation would be a long process. We are unable to find in the record any evidence as to the value of the burned tract before or after the fire. About 50 percent of the surface of the burned area consisted of rock outcroppings.

We have held that "the fundamental principle of damages is to restore the injured party, as nearly as possible, to the position he would have been in had it not been for the wrong of the other party." *United States v. Hatahley,* 257 F.2d 920 (10th Cir. 1958), *cert. denied,* 358 U.S. 899, 79 S.Ct. 222, 3 L.Ed.2d 148. We believe the correct measure of damages under the circumstances in this case to be the reasonable cost of restoration of the land to its condition immediately prior to the fire. *Union Pacific RR v. Vale, Oregon Irr. Dist.,* 253 F.Supp. 251 (D.Or.1966). This would include the cost of suppression of the fire.

The Government, instead of introducing evidence as to the cost of restoration of the property, attempted to show (in dollars) the "resource damage" through the use of formulae prescribed by a manual of the Bureau of Land Management, Form 9210–15a (.31, Step 1), (Exhibit 34) and a form captioned "Individual Fire Report" (Exhibit 3). In preparing the fire report the employees of the Bureau were required to choose a "resource value class" for the entire tract, and then to select a dollar amount representing the fire damage in listed categories (soil, watershed, location, timber, recreation, wildlife, and grazing) and to multiply the resulting figure by the total number of acres burned—all without differentiation as to the varying nature of the terrain. Thus the half of the tract consisting of rock outcroppings received the same treatment as the remainder. There was no evidence that the rocky portions sustained any damage in any of the categories listed in the manual and for which space was provided on the fire report form. The use of the forms under the dictates of the manual produced an arbitrary amount representing claimed "resource damage" which was not supported by competent evidence. The result was reached by the Government's witnesses and under the Bureau's directives in a manner analogous to that employed by the trial court and disapproved by this court in *United States v. Hatahley, supra,* where multiple plaintiffs were awarded equal amounts of a pre-determined lump sum without regard to the actual loss sustained by each. We conclude that the Government did not carry its burden of proof on the issue of the cost of restoration of the tract and that the trial court erred in entering judgment for "resource damage" in the amount of $4,675.00.

Under some circumstances reasonable overhead expenses may be recovered in a tort action when repairs have been made to damaged property by the plaintiff. When recoverable, the amount awarded for overhead expenses must be shown as reasonably paid or incurred as part of the cost of repairs required as a result of the tort feasor's negligence. Overhead expense may not be arbitrarily assessed by the plaintiff. The Government's evidence on this point was that by authority of a directive of the Bureau of Land Management (Exhibit 27) 25 percent of the cost of suppression of the fire was claimed in addition to the direct cost of suppression. The directive simply stated that such a charge should be made in a percentage amount on a graduated scale varying from 5 percent in the case of direct cost exceeding $2,000,000 to 25 percent in the case of direct costs of $250,000 or less. Neither in the directive nor in the testimony of the Government's witnesses is there any explanation as to why a fire suppression expense of more than two million dollars should generate a surcharge, percentage-wise, greater than would be charged for a fire more cheaply extinguished.

The indirect or overhead cost of 25 percent was, according to the testimony of the Chief of the Bureau's Division of Budget and Financing, established by the Bureau after a study of the costs of all fire activi-

ties, including training programs, fire preparedness, the acquisition of equipment, and even the building of the Boise Emergency Fire Center as compared with the direct costs of the suppression of identifiable fires. The major factor considered by the Bureau was the desire "to try and recover all the costs, et cetera". Studies made for the years 1971, 1972, and 1974 resulted in the determination of an indirect rate of 566 percent for 1971 (which the witness felt was "a little bit out of line"), 125 percent for 1972, and 151 percent for 1974.

Most of the items of overhead expense were incurred before the fire as part of the Bureau's ongoing mission to care for and preserve Government property for which it was responsible. The Government's witnesses likened the situation to the cost of maintenance of a fire department. Most of the indirect costs would have been paid or incurred whether the fire in question had occurred or not, and such items as the acquisition of equipment and the building of the Boise Emergency Fire Center added to the Bureau's general inventory and were of long-lasting benefit to the Bureau, as presumably would be the training programs and fire preparedness projects operated by the Bureau.

Since the evidence did not show that the overhead or indirect expenses were attributable to the specific fire here involved, we believe that the judgment should not have included an award for such expenses. The fact that it was "standard Bureau policy" to assess a pre-determined percentage of the direct costs as indirect costs is not enough.

The judgment is affirmed as to the liability of the defendant and as to that part of the award of damages identified as recovery of the cost of suppression of the fire in the amount of $22,514.28 and is reversed and remanded for a new trial only on the issue of damages to be recovered for the reasonable costs of the restoration of the tract substantially to its condition immediately prior to the fire.