501 F.Supp. 18 (1980)
UNITED STATES of America, Plaintiff,
v.
ILLINOIS TERMINAL RAILROAD COMPANY, Defendant.
No. 79-1530C (4).
United States District Court, E. D. Missouri, E. D.
April 29, 1980.
*19 Anne Travis Shapleigh, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.
George E. Lee, Doris J. Banta, Barnard & Baer, St. Louis, Mo., for defendant.

MEMORANDUM
HUNGATE, District Judge.
This matter is before the Court on defendant's motion to dismiss. For the reasons stated below, defendant's motion will be denied.
The United States brings this action to recover the cost of removing an alleged obstruction to the navigable waters on the Illinois River in violation of the River and Harbor Appropriation Act of 1899, now 33 U.S.C. § 403. The government also seeks to recover damages under federal common law, alleging that the obstruction constituted a public nuisance.

Factual Background
Pursuant to § 9 of the River and Harbor Appropriation Act of 1899, now 33 U.S.C. § 401, the War Department, on March 23, 1906, authorized the construction of a railroad bridge over the Illinois River. The defendant railroad company subsequently completed the structure and acquired title to the bridge.
On or before August 27, 1951, the railroad abandoned the bridge, removed its superstructure, but left two bridge piers adjacent to the left side of the river channel.
As traffic on the river increased, the government alleges that the abandoned bridge piers became increasingly hazardous to navigation and that numerous river craft collided into the structures.
The government further alleges that during 1977 the Corps of Engineers and the Coast Guard informed the railroad on several occasions that the abandoned bridge piers had become an obstruction to navigation and ordered the railroad to remove them. On August 11, 1977, the Corps advised the railroad that unless the structures were removed, the Corps would remove them and seek reimbursement from the railroad.
The government now claims damages for the costs of a contract to remove the piers, awarded after the railroad refused to remove the structures.
The defendant railroad moves the Court to dismiss the government's complaint.

Exhaustion of Administrative Remedies
The railroad contends that an administrative hearg, pursuant to 33 U.S.C. § 511, et seq., is a condition precedent before this Court can exercise jurisdiction.
The statutory provision relied upon by the railroad deals with the alteration and removal of bridges which become an obstruction to navigation. A bridge is defined by § 511 as follows:
A lawful bridge over navigable waters of the United States, including approaches, *20 fenders, and appurtenances thereto, which is used and operated for the purpose of carrying railroad traffic, or both railroad and highway traffic ....
Authority over bridges within the meaning of this section was transferred to the Secretary of Transportation in 1966 under 49 U.S.C. § 1655(g)(3).
However, at the time § 1655 was enacted, the railroad's structure in the Illinois River had lost its identity as a bridge. The bridge had been abandoned and the superstructure removed prior to 1952. The only vestiges of the bridge were the two piers which remained in the channel.
Because the piers lost their identity as a bridge prior to 1952, authority over them was not transferred to the Secretary of Transportation in 1966 under § 1655(g)(3). The piers, at all times relevant to this suit, have remained under the jurisdiction of the Corps of Engineers.
Therefore, the Court concludes that rights to notice and an administrative hearing available under 33 U.S.C. § 511 are not applicable to this action.

Statutory Remedies
The government alleges that the bridge piers have become an obstruction to navigation in violation of § 10 of the River and Harbor Appropriation Act of 1899, now 33 U.S.C. § 403. This section states in part:
The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army ....
Penalties for violations of § 403 are provided in § 12 of the River and Harbor Appropriation Act of 1899, now 33 U.S.C. § 406, which states:
Every person and every corporation that shall violate any of the provisions of sections 401, 403, and 404 of this title or any rule or regulation made by the Secretary of the Army in pursuance of the provisions of section 404 of this title shall be deemed guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) not exceeding one year, or by both such punishments, in the discretion of the court. And further, the removal of any structures erected in violation of the provisions of the said sections may be enforced by the injunction of any district court exercising jurisdiction in any district in which such structures may exist, and proper proceedings to this end may be instituted under the direction of the Attorney General of the United States.
The railroad raises three basic objections to the application of these sections to the piers. First, the railroad contends that since the bridge was originally constructed under the authority of Congress pursuant to § 9 of the River and Harbor Appropriation Act of 1899, 33 U.S.C. § 401, the piers cannot be considered to be an obstruction "not affirmatively authorized by Congress" under § 403.
Although the bridge was lawfully erected pursuant to § 401, nothing in the provisions of § 403 prevents the decaying remains of an abandoned bridge from becoming an obstruction not "affirmatively authorized by Congress." See, e. g., United States v. New York Central Railroad Co., 252 F.Supp. 508, 511 (D.Mass.1965), aff'd, 358 F.2d 747 (1st Cir. 1966), finding that a railroad may be liable for the remains of a bridge when they constitute a danger and obstruction to navigation.
Furthermore, the list of prohibited obstructions contained in § 403 is not exclusive. The statutory prohibitions extend to *21 "any type of obstruction." See United States v. Republic Steel Corp. [Republic Steel], 362 U.S. 482, 487, 80 S.Ct. 884, 887, 4 L.Ed.2d 903 (1960).
Therefore, the Court concludes that, even though lawfully erected, the government may be able to prove a set of facts to show the abandoned piers were an obstruction within the meaning of 33 U.S.C. § 403.
Next, the railroad contends that the only remedies available to the government for violations of § 403 are provided under § 406, which authorizes criminal penalties and permits issuance of an injunction to order the removal of any obstruction in navigable waters.
The federal courts have not limited enforcement of the River and Harbor Appropriation Act to the criminal and injunctive remedies provided in § 406. E. g., Wyandotte Transportation Co. v. United States, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). In Republic Steel, the Supreme Court held
Congress has legislated and made its purpose clear; it has provided enough federal law in [33 U.S.C. § 403] from which appropriate remedies may be fashioned even though they rest on inferences. Otherwise we impute to Congress a futility inconsistent with the great design of this legislation.
362 U.S. at 492, 80 S.Ct. at 890.
Therefore, the Court concludes that the remedies available to the government under the River and Harbor Appropriation Act to enforce the provisions of 33 U.S.C. § 403 are broad enough to encompass the present action to recover the expenses incurred in the removal of the bridge piers.

Federal Common Law
Finally, the railroad contends that the government fails to state a claim under a public nuisance theory.
Restatement of Torts (2d) § 821B states that damages may be recovered by an individual suffering harm of a kind different from that suffered by other members of the public. The section further states that a public agency or public official authorized to represent the state may sue to enjoin a public nuisance. However, the railroad argues, the Restatement says nothing about a public agency recovering damages for costs incurred in abatement of a public nuisance.
Recent federal court decisions reflect a growing recognition of suits by government agencies under federal common law for the abatement of public nuisances. Compare Illinois v. Milwaukee, 406 U.S. 91, 92 S.Ct. 1385, 31 L.Ed.2d 712 (1972) with Reserve Mining Co. v. EPA, 514 F.2d 492 (8th Cir. 1975).
Given the overriding federal interest in maintaining safe navigable waters, as well as the breadth of remedies available to enforce the River and Harbor Appropriation Act set forth above, the Court finds nothing to support the railroad's conclusion that equitable relief is the exclusive remedy under a public nuisance theory. See City of Evansville v. Kentucky Liquid Recycling, Inc., 604 F.2d 1008, 1019 n.32 (7th Cir. 1979).
The Court concludes that the government's request for damages rather than injunctive relief does not preclude this Court's exercise of jurisdiction under federal common law.
Therefore, the defendant railroad's motion to dismiss will be denied.