The CITY OF FLAGSTAFF, a municipal corporation, Plaintiff-Appellant,

v.

The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a foreign corporation, et al., Defendants-Appellees.

No. 82–5307.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1983.

Decided Oct. 27, 1983.

Opinion on Denial of Rehearing and Rehearing En Banc Dec. 28, 1983.

Robert W. Warden, Mangum, Wall, Stoops & Warden, Flagstaff, Ariz., for plaintiff-appellant.

John G. Ryan, Phillip Fargo, Fargotstein, Fennemore, Craig, von Ammon & Udall, Phoenix, Ariz., for defendants-appellees.

Before KENNEDY and POOLE, Circuit Judges, and BYRNE,* District Judge.

KENNEDY, Circuit Judge:

The question before us is whether a municipality which commits police, fire, and other relief measures to a major emergency may recover the costs of those services from the tortfeasor who caused the accident. This diversity case requires our interpretation of Arizona law, where the issue appears to be one of first impression. If a later case presents the same question to Arizona's own courts, their resolution will be definitive, not ours; but having the case before us, we must decide it as we think the Arizona courts would. *Edwards v. American Home Assurance Co.,* 361 F.2d 622 (9th Cir.1966). We conclude that the action brought by the municipality is not recognized by Arizona law and that specific authorization for the recovery sought must come from a legislative authority, not the courts. The district court reached the same conclusion. We affirm its order granting summary judgment for the defendants below.

On March 31, 1981, four railroad tank cars carrying liquified petroleum gas derailed near Flagstaff, Arizona. The derailed train was operated by the Atchison, Topeka, and Santa Fe Railway Company, the principal defendant below. To guard the public against hazard from leaks or explosion of the gas, Flagstaff's fire department ordered evacuation of all persons within certain distances of the train, at some places as far as one mile. The expense to the city for the evacuation, including overtime pay, emergency equipment, emergency medical personnel, and the cost of food provided to evacuated residents, was $41,954.81. Flagstaff sued to recover from the railroad on the theory that the city's expenditures were compensable damages, arising from either or both the railroad's negligence or its conduct of an ultrahazardous activity.

Although precedent on the point is limited, we conclude that the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service. *See City of Bridgeton v. B.P. Oil, Inc.,* 146 N.J.Super. 169, 369 A.2d 49 (1976). Where such services are provided by the government and the costs are spread by taxes, the tortfeasor does not expect a demand for reimbursement. This is so even though the tortfeasor is fully aware that private parties injured by its conduct, who cannot spread their risk to the general public, will have a cause of action against it for damages proximately or legally caused. *Id.*

Expectations of both business entities and individuals, as well as their insurers, would be upset substantially were we to adopt the rule proposed by the city. Settled expectations sometimes must be disregarded where new tort doctrines are required to cure an unjust allocation of risks and costs. *See MacPherson v. Buick Motor Co.,* 217 N.Y. 382, 111 N.E. 1050 (1916); *Escola v. Coca-Cola Bottling Co.,* 24 Cal.2d 453, 150 P.2d 436 (1944). The argument for the imposition of the new liability is not so compelling, however, where a fair and sensible system for spreading the costs of an accident is already in place, even if the alternate scheme proposed might be a more precise one. Here the city spreads the expense of emergency services to its taxpayers, an allocation which is neither irrational nor unfair.

Though noting the practical difficulties of the approach, in earlier cases we have acknowledged the force of the suggestion that risks should be imposed on the party who can avoid them most economically or pass the costs on most efficiently. *See Union Oil Co. v. Oppen,* 501 F.2d 558, 569 (9th Cir.1974), citing *Calabresi,* The Cost of Accidents, 69–73 (1970); *Coase,* The Problem of Social Cost, 3 J. Law & Econ. 1 (1960). Even if we were satisfied that we had the information to choose the more efficient cost avoider in this case, between the railroad with its ability to adjust its

* Honorable William Matthew Byrne, Jr., United States District Judge for the Central District of California, sitting by designation.

rates and take greater safety measures, and the city with its power to fix the burden and rate of taxation, an added factor counsels deference to the legislature. Here governmental entities themselves currently bear the cost in question, and they have taken no action to shift it elsewhere. If the government has chosen to bear the cost for reasons of economic efficiency, or even as a subsidy to the citizens and their business, the decision implicates fiscal policy; the legislature and its public deliberative processes, rather than the court, is the appropriate forum to address such fiscal concerns. *United States v. Standard Oil Co. of California,* 332 U.S. 301, 314–17, 67 S.Ct. 1604, 1611–12, 91 L.Ed. 2067 (1947). We doubt judicial intervention is needed to call the attention of Arizona's legislative authorities to the cost allocation presented by what we find to be the existing rule, for the state and its municipalities presently feel the pinch when they pay the bill.

Our decision here does not turn on the underlying theory of the tort; for whether it be negligence or liability from ultrahazardous activities, the considerations we have advanced yield the same result. The question is not, moreover, one of proximate or legal cause, *cf. Marshall v. Nugent,* 222 F.2d 604 (1st Cir.1955), for it is the identity of the claimant and the nature of the cost that combine to deny recovery, not some concept of remoteness.

This is not to say that a governmental entity may never recover the cost of its services. Recovery is permitted where it is authorized by statute or regulation, *see, e.g.,* 33 C.F.R. 74.01–10 (charges by the Coast Guard to owner for marking sunken vessels), or required to effect the intent of federal legislation. *See, e.g., Wyandotte Transportation Co. v. United States,* 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407 (1967). Recovery has also been allowed where the acts of a private party create a public nuisance which the government seeks to abate, *Town of East Troy v. Soo Line Railroad Co.,* 653 F.2d 1123 (7th Cir.1980) (recovery for expense in cleaning up ground water pollution), *cert. denied,* 450 U.S. 922, 101 S.Ct. 1373, 67 L.Ed.2d 351 (1981); *City of Evans-*ville v. Kentucky Liquid Recycling, Inc., 604 F.2d 1008 (7th Cir.1979) (recovery allowed for costs of clean-up of toxic wastes discharged into drinking water supplies), *cert. denied,* 444 U.S. 1025, 100 S.Ct. 689, 62 L.Ed.2d 659 (1980); *United States v. Illinois Terminal Railroad Co.,* 501 F.Supp. 18 (E.D. Mo.1980) (recovery allowed for removal of abandoned bridge piers), and where the government incurs expenses to protect its own property. *See United States v. Chesapeake & Ohio Railway Co.,* 130 F.2d 308 (4th Cir.1942) (recovery allowed for expenses incurred in fighting fire which threatened national forest). These cases fall into distinct, well-defined categories unrelated to the normal provision of police, fire, and emergency services, and none are applicable here.

The judgment is AFFIRMED.

## ON PETITION FOR REHEARING

The petition for rehearing is denied. The appellants did not ask this court to stay proceedings pending a declaratory judgment action in Arizona state court, and there is no procedure by which we may certify questions to the Arizona Supreme Court. The appellants may not wait for our decision and only then complain that we should have stayed our hand.