**12-1600-cv**
*County of Erie v. Colgan Air, Inc.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

_____

August Term, 2012

(Argued: February 1, 2013        Decided: March 4, 2013)

Docket No. 12-1600-cv

_____

COUNTY OF ERIE, NEW YORK,

*Plaintiff-Appellant*,

-v.-

COLGAN AIR, INC., PINNACLE AIRLINES CORP., CONTINENTAL
AIRLINES, INC.,

*Defendants-Appellees*.

_____

Before:
    WALKER, CABRANES, AND WESLEY, *Circuit Judges*

_____

Plaintiff-Appellant County of Erie, New York seeks to recover the costs of emergency and clean-up services it incurred when responding to the crash of Continental Connection Flight 3407 within its borders. The United States District Court for the Western District of New York (Skretny, *C.J.*) dismissed the complaint under Federal Rule of Civil Procedure 12(b)(6), holding that the action was barred under New York law by the state's "free public services" doctrine. We AFFIRM.

_____

JAMES J. DUGGAN, Duggan & Bentivogli LLP, Williamsville, NY (Michelle Parker, Erie County Attorney's Office, Buffalo, NY, *on the brief*), *for Appellant*.

DAVID J. HARRINGTON, Condon & Forsyth LLP, New York, NY (Neil A. Goldberg, Goldberg Segalla LLP, Buffalo, NY; Oliver K. Beiersdorf, Reed Smith LLP, New York, NY; Patrick E. Bradley, Reed Smith LLP, Princeton, NJ, *on the brief*), *for Appellees*.

David A. Berg, Senior Vice President and General Counsel, Douglas Mullen, Assistant General Counsel, Airlines for America, Washington, D.C.; Mark E. McGrath, M. Roy Goldberg, Sheppard Mullin Richter & Hampton LLP, New York, NY, *for Amicus Curiae Airlines for America in support of Appellees*.

---

WESLEY, Circuit Judge:

After the February 12, 2009 crash of Continental Connection Flight 3407 on approach to Buffalo-Niagara International Airport, plaintiff-appellant County of Erie, New York ("the County") sued defendants-appellees Colgan Air, Inc., Pinnacle Airlines Corp., and Continental Airlines, Inc. (collectively "defendants") to recover its expenditures in responding to, and cleaning up after, the accident. The United States District Court for the Western District of New York (Skretny, *C.J.*) granted defendants' motion to dismiss the complaint under Federal Rule of Civil

2

Procedure 12(b)(6).  *County of Erie v. Colgan Air, Inc.*, No. 10-CV-157S, 2012 WL 1029542, at *2 (W.D.N.Y. Mar. 26, 2012). The court found the County's claims barred by New York law on the ground that "'public expenditures made in the performance of governmental functions are not recoverable.'" *Id.* (quoting *Koch v. Consolidated Edison Co. of N.Y.*, 62 N.Y.2d 548, 560 (1984)).  The County appeals, and we affirm.

**Background**

According to the amended complaint, Flight 3407 departed from Newark en route to Buffalo on February 12, 2009.  On descent, the flight crashed into a private residence in Clarence Center, Erie County, approximately five miles from the airport, killing all passengers and crew as well as one person in the house.  The crash "caus[ed] substantial damage to the neighboring properties, including serious environmental clean-up expenses and damages."  Joint App'x 67.

The County filed suit on March 1, 2010.  It later filed an amended complaint asserting five causes of action: negligence, *res ipsa loquitur* negligence,[1] public nuisance,

---

[1]Although the County in its complaint asserted negligence on the theory of *res ipsa loquitur* as an additional count, *res ipsa loquitur* is not a cause of action

3

liability under New York Public Health Law § 1306, and liability under New York General Business Law § 251. The County asserted in the amended complaint that it

> has sustained unnecessary and unprecedented property and financial damage as a direct and proximate result of Defendants' wanton, reckless, negligent, and willful conduct to the extent Erie County was required to expend resources in excess of the normal provisions of police, fire, and emergency services as a result of the crash of Flight 3407. Specifically, [the County] was forced to expend unprecedented monetary resources in order to provide public services including: Overtime pay for police and emergency personnel; the clean-up and removal of human remains; the clean-up and removal of chemical substances originating from the Aircraft[;] the clean-up and removal of the Aircraft itself; the provision of emergency and counseling services to the surviving members of the decedents' families; and the purchase, lease, or rent of equipment necessary to respond to the crash of Flight 3407.

Joint App'x 71.

## Discussion

We review *de novo* a district court's dismissal under Rule 12(b)(6), "construing the complaint liberally, accepting all factual allegations in the complaint as true,

---

but rather an evidentiary doctrine that allows "an inference of negligence [to] be drawn solely from the happening of the accident upon the theory that certain occurrences contain within themselves a sufficient basis for an inference of negligence." *Dermatossian v. N.Y.C. Transit Auth.*, 67 N.Y.2d 219, 226 (1986) (internal quotations omitted). "The rule has the effect of creating a prima facie case of negligence sufficient for submission to the jury . . . ." *Id.*

4

and drawing all reasonable inferences in the plaintiff's favor." *Chase Grp. Alliance LLC v. City of N.Y. Dep't of Fin.*, 620 F.3d 146, 150 (2d Cir. 2010) (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Additionally, "[a]n affirmative defense may be raised by a pre-answer motion to dismiss under Rule 12(b)(6) if the defense appears on the face of the complaint."[2] *Iowa Pub. Employees' Ret. Sys. v. MF Global, Ltd.*, 620 F.3d 137, 145 (2d Cir. 2010) (alteration and quotation marks omitted).

Having considered the arguments *de novo*, we affirm the judgment of the district court for substantially the reasons stated in its well-reasoned decision and order. The County's claims arise under New York law, and New York law

---

[2]For this reason, we need not consider whether the public-expenditure rule at issue here is an affirmative defense or a factor that must be defeated as part of the County's *prima facie* case on its various claims.

therefore provides the elements of, and defenses to, those causes of action. *See Ferri v. Ackerman*, 444 U.S. 193, 198 (1979) ("[W]hen state law creates a cause of action, the State is free to define the defenses to that claim, including the defense of immunity, unless, of course, the state rule is in conflict with federal law.").

As the district court explained, New York's "'general rule is that public expenditures made in the performance of governmental functions are not recoverable.'" *County of Erie*, 2012 WL 1029542, at *2 (quoting *Koch*, 62 N.Y.2d at 560). In *Koch*, New York City, after a 25-hour citywide blackout caused by Con Edison's negligence, attempted to recover from the company "costs incurred for wages, salaries, overtime and other benefits of police, fire, sanitation and hospital personnel from whom services (in addition to those which would normally have been rendered) were required in consequence of the blackout." *Koch*, 62 N.Y.2d at 560. The Court of Appeals rejected the city's claim as contrary to the "general rule" regarding non-recoverable public expenditures, citing cases holding similarly in the context of a nuclear accident, an oil spill, and the dumping of a large quantity of tires. *Id.*

6

"The general rule is grounded in considerations of public policy, and we perceive nothing in the different and somewhat closer relationship between Con Edison and plaintiffs in this case which would warrant departure from that rule." *Id.* at 560-61.

Other courts have found that the doctrine is rooted in a recognition that "'the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service.'" *See County of Erie*, 2012 WL 1029542, at *2 (quoting *City of Flagstaff v. Atchison, Topeka and Santa Fe Ry. Co.*, 719 F.2d 322, 323 (9th Cir. 1983)). For example, in *District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (D.C. Cir. 1984), the municipal authorities for the District of Columbia sued Air Florida airlines for the cost of responding to a plane that crashed into a bridge over the Potomac River. Citing *Koch* and related cases, the *Air Florida* court rejected the city's claim for reimbursement for emergency services, noting:

> Where emergency services are provided by the government and the costs are spread by taxes, the tortfeasor does not anticipate a demand for reimbursement. Although settled expectations must sometimes be disregarded when new tort doctrines are needed to remedy an inequitable allocation of risks and costs, where a generally fair

7

system for spreading the costs of accidents is already in effect – as it is here through assessing taxpayers the expense of emergency services – we do not find the argument for judicial adjustment of liabilities to be compelling.

We are especially reluctant to reallocate risks where a governmental entity is the injured party. It is critically important to recognize that the government's decision to provide tax-supported services is a legislative policy determination. It is not the place of the courts to modify such decisions. Furthermore, it is within the power of the government to protect itself from extraordinary emergency expenses by passing statutes or regulations that permit recovery from negligent parties.

*Id.* at 1080.

Like the district court, we conclude that, absent an exception, the free public services doctrine plainly bars the County's claims to recover public expenditures. Some of the County's arguments amount to an assertion that the doctrine lacks strong support in New York law and has been weakened by subsequent related developments, but these arguments are unavailing – most notably because the New York Court of Appeals has not suggested that the doctrine no longer applies. *See Bank of N.Y. v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994) ("In making [the] determination [of what New York law provides, we] of course will afford the greatest weight to the decisions of the New York Court of Appeals.").

8

Moreover, neither of the County's arguments on this point is persuasive.  First, the County contends that various cases arising from the terrorist attacks on September 11, 2001, have "expanded the duty of an airline to pay for consequences of a crash far greater in scope than the lives of the passengers and crew killed in a crash or the value of the airplane."  Appellants' Reply at 8; *see also, e.g.*, *In re Sept. 11 Litig.*, 594 F. Supp. 2d 374, 380 (S.D.N.Y. 2009).  These cases are irrelevant.  The scope of the *defendants'* duties is not at issue.  The only question presented is whether the free public services doctrine bars the *County's* recovery, and the County has not pointed to any aspect of the September 11 decisions that bears on that issue.

Second, we disagree with the County's assertion that New York has implicitly abandoned the free public services doctrine by allowing individual officers to recover for personal injuries sustained in the line of duty – contrary to the common-law "fireman's rule," which previously barred that type of suit.[3]  Though the free public services

---

[3]"The 'firefighter's rule,' a product of [New York's] long-standing common law, precludes firefighters and police officers from recovering damages for injuries caused by negligence in the very situations that create the occasion

9

doctrine and fireman's rule are similar in some respects, the cases cited by the County do not suggest that the free public services doctrine cannot stand on its own without the fireman's rule. *See Koch*, 62 N.Y.2d at 560-61; *Austin v. City of Buffalo*, 182 A.D.2d 1143, 1144 (4th Dep't 1992). Moreover, to the extent that New York has abandoned the fireman's rule, it has done so through *statutes* that provide for *individual* rights of action for injuries sustained by public officials.

New York's legislature, through enactments in 1935, 1989, 1992, and 1996, successively loosened the restrictions on the ability of firefighters and police officers to seek redress for their injuries from tortfeasors. *See, e.g.*, *Giuffrida v. Citibank Corp.*, 100 N.Y.2d 72, 77-79 (2003) (discussing legislative reforms). General Obligations Law § 11-106 (L. 1996, ch. 703, § 5), to which the County points in support of its argument here, permits police officers or firefighters injured in the line of duty to recover damages from the person or entity whose negligence caused the

---

for their services. . . . where the injury sustained is related to the particular dangers which [they] are expected to assume as part of their duties." *Zanghi v. Niagara Frontier Transp. Comm'n*, 85 N.Y.2d 423, 438-39 (1995) (internal quotation marks and citations omitted).

10

injury.  However, this law does not enable a local government entity to, for example, recover police or firefighters' overtime costs.  Nor does it alter the free public services doctrine.  If anything, the statute militates against the County's argument, since it does not provide for a governmental right of action to recover public expenses.  *See generally* N.Y. Stat. Law, § 240 ("The maxim *expressio unius est exclusio alterius* is applied in the construction of the statutes . . . .").

The heart of the County's theory on appeal is that its response to Flight 3407 falls within an exception to the free public services doctrine.  The Court of Appeals noted in *Koch* that "certain exceptions to the general rule have been created by statutory enactment to give a municipality a claim for expenditures for fire fighting and other police powers," such as claims for injuries to first responders or against municipalities that called for outside assistance.  *Koch*, 62 N.Y.2d at 561.  In *Koch*, however, "[n]o statute [was] called [to the court's] attention which would accord a comparable benefit to plaintiffs in the circumstances of this case."  *Id.*  The County asserted below that either of two exceptions to the doctrine should apply in this case: a

general exception for public nuisances, or a statutory exception under New York Public Health Law § 1306.

The district court rejected both of these contentions. First, it noted that there could not, strictly speaking, be a general "public nuisance exception" because "'it would be the exception that swallows the rule, since many expenditures for public services could be re-characterized by skillful litigants as expenses incurred in abating a public nuisance.'" *County of Erie*, 2012 WL 1029542, at *4 (quoting *Walker County v. Tri-State Crematory*, 643 S.E.2d 324, 328 (Ga. App. 2007)). Thus, "recovery for a public nuisance is a separate cause of action . . . 'unrelated to the normal provision of police, fire, and emergency services.'" *Id.* (quoting *City of Flagstaff*, 719 F.2d at 324). We agree with the district court, and the County does not appear to pursue this argument on appeal.

The County does contend, however, that § 1306 provides a statutory exception. The relevant section of that statute states:

> The expense of suppression or removal of a nuisance or conditions detrimental to health shall be paid by the owner or occupant of the premises, or by the person who caused or maintained such nuisance or other matters, and the board of health of the municipality or county wherein the premises are located may maintain an action

12

in the name of the municipality or county to recover such expense, and the same when recovered shall be paid to the treasurer of the municipality or county . . . .

N.Y. Pub. Health § 1306(1).  The district court "decline[d] Plaintiff's invitation to treat the crash itself and the immediate aftermath as a public nuisance within the meaning of New York law [because the County had] alleged neither a continuing nor recurrent problem, or that permanent damage from the crash required remediation beyond the clean up itself."  *County of Erie*, 2012 WL 1029542, at *4.

We agree that this was the correct approach.  "Nuisance is a conscious and deliberate act involving the idea of continuity or recurrence."  *State v. Long Island Lighting Co.*, 493 N.Y.S.2d 255, 258 (Nassau County Ct. 1985).  "Doubtless some degree of permanence is an essential element of the conception of nuisance."  *Ford v. Grand Union Co.*, 240 App. Div. 294, 296 (3d Dep't 1934).  Defendants' brief persuasively catalogs nuisance cases supporting this concept; the cases refer to such conditions as the leaking of various kinds of waste or other encroachments on property.  *See* Appellees' Br. at 12-17.  It is clear, especially in the absence of any effective response from the County, that an accidental airplane crash is entirely

13

different from the conscious creation of a continuous or recurring condition.

This is not to say that the conditions at the crash site do not *resemble* the conditions that are subject to public recovery under § 1306, or that those conditions could not have *become* a nuisance. Rather, as the district court correctly explained, recovery under § 1306 is limited to recovering expenditures relating to continuing public nuisances, where "the duty to prevent or abate a nuisance on the property rests with the owner or the party that caused the nuisance." *County of Erie*, 2012 WL 1029542, at *4 (citing *Broxmeyer v. United Capital Corp.*, 79 A.D.3d 780, 782 (2d Dep't 2010)). In such cases, "[r]eimbursement is not precluded because, in the interest of public health and safety, the local government is performing not its own duty, but the duty of another." *Id.* When the government responds to a catastrophic accident, however, it performs *its own duty* of responding to a discrete public emergency – not a duty on behalf of or in place of a third party. *See Laratro v. City of New York*, 8 N.Y.3d 79, 81 (2006) ("Protecting health and safety is one of municipal government's most important duties."); *id.* at 82-83 (mentioning "the duty to

14

provide police protection, fire protection or ambulance service . . . that the municipality owes to the general public").

The County's briefs on appeal do not seek to establish that the crash was a "nuisance" within the meaning of the statute. Instead, they attempt to distinguish "nuisance" from "conditions detrimental to health" and argue that the latter clause creates a separate basis for recovery. Essentially, according to the County, because the response to the plane crash included the removal of human remains and other actions which, if left uncompleted, might cause health concerns, its costs are recoverable. Nothing in the statute or its context supports this reading. Article 13 of the New York Health Law is entitled "Nuisances and Sanitation," and the various titles thereunder deal with such subjects as "noxious weeds and growths," "tenement house sanitation," "food handling," "inactive hazardous waste disposal sites," and "control of lead poisoning." *See* N.Y. Pub. Health Law tit. II, III, VIII, X, & XII-A. Under New York law, "words employed in a statute are construed in connection with, and their meaning is ascertained by reference to[,] the words and phrases with which they are associated." N.Y. Stat. Law

15

§ 239.  Thus, although it may be possible for "conditions detrimental to health" to exist absent a "nuisance,"[4] both terms refer to the same types of conditions and circumstances that are addressed by the concept of a "nuisance" under Article 13 of the New York Health Law.  The County's attempt to shoehorn the immediate results of a catastrophic accident into this limited category on the grounds that the bodies of those killed have become "detrimental to health" is unpersuasive.

Also unpersuasive is the one case the County cites in support of its preferred construction.  The County argues that the case of *Town of Cheektowaga v. Saints Peter & Paul Greek Russian Orthodox Church*, 205 N.Y.S. 334 (N.Y. Sup. Ct. 1924), establishes that "New York decisional law has already set forth that the obvious health hazards associated with human remains are a matter of health safety."  Appellants' Br. at 21.  *Town of Cheektowaga* concerned the defendant church's attempt to create a cemetery on land to which it

---

[4]For instance, public officials might abate certain conditions that endanger the health of the occupants but that do not interfere with the rights of the public or adjacent property owners.  This example illustrates that although applications of § 1306 are at least limited to the same types of conditions addressed by nuisance law, the provision is not necessarily confined to the abatement of conditions that meet the legal definition of a "nuisance."

16

had recently acquired title. The town brought an action to restrain the church from doing so because of the land's proximity to drinking-water wells. The court granted the request, noting that burial so close to the wells, given the soil conditions of the area, "would certainly annoy, injure, or endanger the comfort, repose, health, or safety of a considerable number of persons." *Town of Cheektowaga*, 205 N.Y.S. at 335. "Such act would be a nuisance." *Id.*

In designating the proposed cemetery a "nuisance," *Town of Cheektowaga* directly contradicts the County's contention that the presence of human remains necessarily causes the separate problem of "conditions detrimental to health" under § 1306. The cemetery was deemed a nuisance because it threatened the water supply and in turn public health; the recovery and cataloguing of human remains from an accident site that are performed as part of the post-accident investigation and clean up are not related to concerns of groundwater pollution. We perceive no administrable distinction, or one recognized under New York law, to treat certain clean-up expenses (such as those relating to human remains) differently from other public expenses (such as overtime pay for police) where all of these expenses were

17

incurred as part of a continuous response to the same public emergency.

"Thus, the existence and remediation of public nuisances 'fall into [a] distinct, well-defined categor[y] unrelated to the normal provision of police, fire, and emergency services.'" *County of Erie*, 2012 WL 1029542, at *4 (quoting *City of Flagstaff*, 719 F.2d at 324). To hold otherwise would, as the district court noted, create an exception that would swallow the rule of the free public services doctrine. So too would permitting the County to treat any emergency that creates any condition deemed detrimental to health in some way as a basis to claim reimbursement under § 1306. In other words, public services provided in response to an emergency are just that – public services – and therefore are not subject to reimbursement. *See Koch*, 62 N.Y.2d at 560-61.

## Conclusion

We have examined all of the County's arguments on appeal and find them to be without merit. For the foregoing reasons, the judgment of the district court dismissing the County's complaint is **AFFIRMED.**

18