# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 99

APRIL TERM, A.D. 2015

August 3, 2015

THE STATE OF WYOMING,

Appellant
(Intervenor-Plaintiff),

v.

BLACK HILLS POWER, INC., a South
Dakota corporation,

Appellee
(Defendant).

S-14-0268

*W.R.A.P 11 Certification from the*
*United States District Court, District of Wyoming*
*The Honorable Scott W. Skavdahl, Judge*

*Representing Appellant:*
    Peter K. Michael, Wyoming Attorney General; Martin L. Hardsocg, Deputy
    Attorney General;* Ryan T. Schelhaas, Senior Assistant Attorney General; Jared
    S. Crecelius, Senior Assistant Attorney General; and Megan L. Nicholas, Senior
    Assistant Attorney General.  Argument by Ms. Nicholas.

*Representing Appellee:*
    Stuart R. Day and Scott P. Klosterman of Williams, Porter, Day & Neville, P.C.,
    Casper, Wyoming; Thomas G. Fritz, Steven J. Oberg, and Catherine M. Sabers of
    Lynn, Jackson, Shultz & Lebrun, Rapid City, South Dakota.  Argument by Ms.
    Sabers.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

*\* Order allowing withdrawal of counsel Martin L. Hardsocg filed March 13, 2015.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]    The United States District Court for the District of Wyoming certified three questions concerning the State of Wyoming's ability to recover expenses incurred in suppressing a wildfire near Newcastle, Wyoming from the party whose alleged negligence created the need for those services.

## CERTIFIED QUESTIONS

[¶2]    1.    Can the State of Wyoming recover its fire suppression and/or emergency services costs from a party whose negligence created the need for the emergency services?[1]

2.    If the State of Wyoming cannot generally recover its fire suppression and/or emergency services costs from a party whose negligence created the need for the services, can the State of Wyoming nonetheless recover the costs of its services where portions of the lands protected by the fire suppression effort were State lands?

3.    If the State of Wyoming can recover the costs of its services where portions of the lands protected by the fire suppression effort were State lands, is the State's recovery limited in any way, such as to a pro rata share of those costs based on the State's percentage of the total acres affected by the fire?

## FACTS

[¶3]    The federal district court's certification order contains a statement of facts relevant to the questions certified.  Although our review and ultimate resolution of the questions do not require application of the facts, we set forth that portion of the order to provide context:

> *(b) Statement of Relevant Facts*
>
> 1.    On June 29, 2012, a wildfire was ignited near Newcastle, Weston County, Wyoming.  The fire, referred to as the "Oil Creek Fire," originated in an area with a concentrated number of nearby State parcels and grew to a point that it could not be contained with the resources of the local Fire District in Weston County.
> 2.    For qualified "emergency fires," as defined by Wyo. Stat. § 36-1-401(a)(ii), the costs of suppressing the fires are covered by the State of Wyoming through its Emergency

---

[1] These questions do not concern the State's right to recover damages to its land, timber, or structures.

Fire Suppression Account, created by § 36-1-402 and administered by the State Forester under § 36-1-403. As a participating county pursuant to the provisions of § 36-1-404, Weston County requested that the State pay for the costs of suppressing the Oil Creek Fire from the State's Emergency Fire Suppression Account. The State Forester approved the request.

3. The Oil Creek Fire allegedly consumed more than 61,000 acres, damaging approximately 9,857 acres of lands owned and managed by the State of Wyoming.

4. The State allegedly incurred approximately $5,213,000 in suppression costs for the Oil Creek Fire, which it has paid or will pay from the State's Emergency Fire Suppression Account.

*(c) Nature of Controversy*

On April 12, 2013, a group of private landowners ("Landowners") filed this action [in Federal Court] against Defendant, Black Hills Power ("BHP"), alleging BHP was negligent in its inspection, operation, and maintenance of a 69kV transmission line, which ignited the Oil Creek Fire and resulted in damages to the Landowners. . . . BHP disputes liability and denies the nature and extent of the Landowners' alleged damages. On June 3, 2014, the State of Wyoming filed a motion to intervene, which was granted on July 1, 2014. The State's Complaint was subsequently filed.

In its Complaint, the State also alleges BHP was negligent in its inspection, maintenance and operation of the 69kV transmission line. The State seeks recovery for damages to State-owned property as well as for suppression costs associated with the Oil Creek Fire, including both costs incurred in the protection of its own property and through payment obligations to Weston County from the State's Emergency Fire Suppression Account. The State's Complaint does not delineate between the amount of fire suppression costs incurred in the protection of State land versus those fire suppression costs incurred in protection of lands owned by other parties.

Defendant moved to dismiss the State's claim for recovery of fire suppression costs arguing, because recovery of such costs by a governmental entity is not recognized at common law, the State cannot make a viable claim for

2

recovery of fire suppression costs in the absence of a specific state statute authorizing recovery. In response, the State argues, even if the "public services doctrine" was recognized in Wyoming, an exception to the doctrine applies where the government incurs expenses to protect its own property.

## STANDARD OF REVIEW

[¶4]　Pursuant to W.R.A.P. 11.01, we may answer a question of law that may be determinative of a cause pending in the certifying court for which there appears to be no controlling precedent from this Court. *Preston v. Marathon Oil Co.*, 2012 WY 66, ¶ 4, 277 P.3d 81, 83 (Wyo. 2012). Certified questions are queries of law that are reviewed de novo. *Id.*; *State v. Mares*, 2014 WY 126, ¶ 10, 335 P.3d 487, 493 (Wyo. 2014).

## DISCUSSION

*General Rule*

[¶5]　The general common law rule adopted by other jurisdictions, which has been called the *free public services doctrine*, provides that absent specific statutory authorization, a governmental entity cannot recover the costs of providing public services from a tortfeasor whose conduct caused the need for such services.[2] *See Dist. of Columbia v. Air Florida, Inc.*, 750 F.2d 1077, 1080 (D.C. Cir. 1984); *City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co.*, 719 F.2d 322, 323-24 (9th Cir. 1983); *Walker Cnty. v. Tri-State Crematory*, 643 S.E.2d 324, 327 (Ga. Ct. App. 2007). The *raison d'être* for the rule is that a governmental entity providing certain essential services for the public can more fairly absorb and pass the costs for those services on to its citizenry as a whole through taxation. *Dist. of Columbia*, 750 F.2d at 1080; *City of Flagstaff*, 719 F.2d at 323-24; *City of Bridgeton v. B. P. Oil, Inc.*, 369 A.2d 49, 54 (N.J. Super. 1976).

[¶6]　A seminal case is *City of Flagstaff*, 719 F.2d at 323, in which the Ninth Circuit Court of Appeals held that "the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service." *See also Dep't of Natural Res. v. Wisconsin Power & Light Co.*, 321 N.W.2d 286, 288 (Wis. 1982) ("Any liability for the cost of extinguishing the instant fire must be imposed by statute, for there is no common law liability permitting a governmental entity to charge an electric utility for fire suppression expenses."). It went on to explain that the

---

[2] The rule is also referred to as the *municipal cost recovery rule* when applied to cities. *See City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1143-44 (Ill. 2004); *City of Philadelphia v. Beretta U.S.A., Corp.*, 126 F. Supp. 2d 882, 894 (E.D. Pa. 2000).

governmental entities themselves currently bear the cost in question, and they have taken no action to shift it elsewhere. If the government has chosen to bear the cost for reasons of economic efficiency, or even as a subsidy to the citizens and their business, the decision implicates fiscal policy; the legislature and its public deliberative processes, rather than the court, is the appropriate forum to address such fiscal concerns.

*City of Flagstaff*, 719 F.2d at 324; *see also City of Chicago*, 821 N.E.2d at 1144-45.

[¶7]    A year later, a similar result was reached in *District of Columbia v. Air Florida*, 750 F.2d at 1079. In that case, the District of Columbia brought a negligence action against an airline seeking to recoup costs associated with rescue and recovery efforts incurred due to a plane crash. *Id.* The District of Columbia Circuit Court of Appeals affirmed the district court's dismissal of the action based upon the free public services doctrine. In so doing, the court explained:

Where emergency services are provided by the government and the costs are spread by taxes, the tortfeasor does not anticipate a demand for reimbursement. Although settled expectations must sometimes be disregarded when new tort doctrines are needed to remedy an inequitable allocation of risks and costs, where a generally fair system for spreading the costs of accidents is already in effect—as it is here through assessing taxpayers the expense of emergency services—we do not find the argument for judicial adjustment of liabilities to be compelling.

We are especially reluctant to reallocate risks where a governmental entity is the injured party. It is critically important to recognize that the government's decision to provide tax-supported services is a legislative policy determination. It is not the place of the courts to modify such decisions. Furthermore, it is within the power of the government to protect itself from extraordinary emergency expenses by passing statutes or regulations that permit recovery from negligent parties.

*Id.* at 1080; *see also Cnty. of Erie, New York v. Colgan Air, Inc.*, 711 F.3d 147, 150-51 (2d Cir. 2013); *Walker Cnty.*, 643 S.E.2d at 327.

4

[¶8]   We are convinced that the reasons for the common law's free public services doctrine as articulated in *City of Flagstaff, District of Columbia* and similar cases are sound.[3]   Accordingly, like many other jurisdictions, we adopt the free public services doctrine.  Absent a legislative grant of authority, the State of Wyoming may not generally recover its fire suppression and/or emergency service costs from a party whose negligence created the need for the services.

[¶9]   Turning then to whether there is any statutory authority that would allow the State to recover the fire suppression and/or emergency service costs incurred in suppressing the Oil Creek Fire from BHP, or prohibit it from doing so, we must examine the statutes which create an emergency fire suppression account, which in turn allows the State to come to the aid of counties whose resources are insufficient to suppress a fire.  Guided by our rules of statutory interpretation, *see Aland v. Mead*, 2014 WY 83, ¶ 11, 327 P.3d 752, 758-59 (Wyo. 2014), we find that Wyo. Stat. Ann. §§ 36-1-401 through 404 (LexisNexis 2015) do not provide any hint that the legislature intended to alter the general common law rule and shift costs to the party whose negligence created the need for the fire suppression and/or emergency services.

[¶10] Wyo. Stat. Ann. § 36-1-401 defines essential terms used in the statutes establishing the emergency fire suppression program.  The next section, § 36-1-402, creates the emergency fire suppression account.  It sets forth the funding and investing structure, which relies upon legislative appropriations, assessments from participating counties, and investment income.  Wyo. Stat. Ann. § 36-1-403 establishes the state forester's powers and duties in relation to the emergency fire suppression account.  And lastly, § 36-1-404 outlines how a county desiring to participate in the emergency fire suppression account goes about doing so.  Plainly absent from these statutes is language evidencing legislative intent that the State may recover fire suppression or emergency service costs from a negligent party, or that it cannot do so if the State incurred the expenses to protect its own property.

[¶11] By way of comparison, the legislature has statutorily authorized recovery of fire suppression costs in cases involving railroads.  In Title 37 (Public Utilities), Chapter 9 (Railroads), the clear language evidences the legislature's intent that fire suppression costs for fires started by railroads is to be borne by the operating railroad:

---

[3] *See, e.g., Cnty. of Erie, New York*, 711 F.3d at 150-51; *Walker Cnty.*, 643 S.E.2d at 327; *City of Chicago*, 821 N.E.2d at 1144; *United States v. Rocky Mtn. Power*, No. 2:11-CV-00227, 2011 WL 3423383, at *3 (D. Utah Aug. 4, 2011); *Matter of Oil Spill by Amoco Cadiz Off Coast of France on Mar. 16, 1978*, 954 F.2d 1279, 1310-11 (7th Cir. 1992); *Koch v. Consolidated Edison Co. of N.Y.*, 468 N.E.2d 1, 8 (N.Y. 1984); *Dep't of Natural Res.*, 321 N.W.2d at 288; *Town of Freetown v. New Bedford Wholesale Tire, Inc.*, 423 N.E.2d 997, 997-98 (Mass. 1981); *City of Bridgeton*, 369 A.2d at 54; *Allenton Volunteer Fire Dep't v. Soo Line R. Co.*, 372 F. Supp. 422, 423 (E.D. Wis. 1974).

(a) Every railroad corporation operating its line of road, or any part of it, within this state, shall be liable for all damages by fire resulting from or caused by operating any such line of road **together with suppression costs**, established by the department of transportation, and any damages and costs in any court of competent jurisdiction.

(b) Any damage and **suppression cost** may be recovered by the party damaged if an action is brought by the party injured within one (1) year next after said damages shall have been inflicted or caused. An injured party who recovers more than has been last offered in writing by the railroad under this section may be awarded reasonable attorney fees and other costs incurred in seeking recovery under this section if it is determined that the railroad acted unreasonably and without cause.

Wyo. Stat. Ann. § 37-9-303 (LexisNexis 2015) (emphasis added).

[¶12]  The fact that the Wyoming legislature has enacted statutes allowing recovery of fire suppression costs for fires caused by railroads, by *expressio unius est exclusio alterius*, indicates that it normally expects the governmental entities to cover their expenses through taxes and fees.  Because the statutes relating to the emergency fire suppression program do not include any provision to institute suit or recover fire suppression costs from an allegedly negligent party, the State's tort claim to generally recover all costs associated with suppressing the Oil Creek Fire is barred by the free public services doctrine.

[¶13]  The answer to the first certified question is, therefore, no.

### *Exception to the General Rule*

[¶14]  As with most rules, there is an exception to the free public services doctrine "where the government incurs expenses to protect *its own* property."  *City of Flagstaff,* 719 F.2d at 324 (emphasis added); *see also Dist. of Columbia,* 750 F.2d at 1080; *United States v. Denver & Rio Grande W. R.R. Co.,* 547 F.2d 1101, 1105 (10th Cir. 1977); *United States v. Morehart,* 449 F.2d 1283 (9th Cir. 1971); *Chesapeake & O. Ry. Co. v. United States,* 139 F.2d 632, 633 (4th Cir. 1944); *United States v. Chesapeake & O. Ry. Co.,* 130 F.2d 308, 310 (4th Cir. 1942); Restatement (First & Second) of Torts § 919 (1979, updated 2015).  As the authorities just cited indicate that, like private property owners, the government can recover expenses reasonably incurred to protect its own property.

6

[¶15] Thus, even though the State of Wyoming cannot generally recover its fire suppression and/or emergency services costs from a party whose negligence created the need for the services, it may be able to recover the costs of its service where portions of the lands protected by the fire suppression effort were State lands. Whether it can recover here, and to what extent, is the subject of the third certified question.

[¶16] Accordingly, the answer to the second certified question is yes.

***Amount of Recovery for Costs Incurred in Protecting State Lands***

[¶17] The third question certified asks if the State of Wyoming can recover the costs of its services where portions of the lands protected by the fire suppression effort were State lands, whether the State's recovery is limited in any way. The narrow answer is not as a matter of law. We point out that when real property has been damaged or destroyed by a wrongful act, the desired objective is to ascertain as accurately as possible the amount of money that will fairly and adequately compensate the owner for the loss. *See Goforth v. Fifield*, 2015 WY 82, ¶ 37, __ P.3d __, __ (Wyo. June 11, 2015); *see also Denver & Rio Grande W. R.R. Co.*, 547 F.2d at 1105 ("[T]he fundamental principle of damages is to restore the injured party, as nearly as possible, to the position he would have been in had it not been for the wrong of the other party."). "This would include the cost of suppression of the fire." *Id.* at 1105; *see Chesapeake & O. Ry. Co.*, 130 F.2d at 310 ("The principle of liability for foreseeable consequences, upon which this rule is based, certainly permits the recovery of damages in the form of expenditures incurred in attempting to save property."); Restatement (First & Second) of Torts § 919.

[¶18] Beyond that, we find that the question raises issues of fact that will have to be resolved by the federal district court. *See Cross v. Berg Lumber Co.*, 7 P.3d 922, 928 (Wyo. 2000) ("Damages are findings of ultimate fact."); *Chesapeake & O. Ry. Co.*, 130 F.2d at 310 ("The fire was rapidly approaching the property of the plaintiff and whether or not the plaintiff was justified in the steps it took to extinguish the fire was a question to be passed upon by a jury.").

[¶19] The question posed and the briefs and arguments of the parties suggest a number of unknowns. We have no way of knowing whether the State would have been obligated to expend the funds it did fighting the Oil Creek Fire by the terms of its fire suppression agreement with Weston County, whether or not State property had been threatened. Those contracts and evidence as to how the fire suppression fund is administered are not before us on this certified question. We would expect BHP to argue that if the State had the obligation to fight the fire regardless of whether State land was threatened, it did not actually incur the expenses to protect its property, but rather to fulfill its obligations to Weston County.

[¶20]   Whether or not that is an issue, we cannot hope to ascertain on a certified question whether the State had to expend all of the funds it did to protect State property because it had to fight the fire on adjacent private property to protect its own lands.  We conjecture that the question of whether the costs of fighting the fire on State lands can be apportioned from the overall costs incurred will be the subject of testimony by dueling experts in fire suppression, and if so, the trier of fact will have to evaluate that testimony.

[¶21]   While the third certified question predominantly raises questions of fact, we are able to find that the State's recovery is not limited in any way as a matter of law.

## CONCLUSION

[¶22]   The answer to the first certified question is no.  The State cannot generally recover its fire suppression and/or emergency service costs from a party whose negligence created the need for the emergency services because of the free public services doctrine.

[¶23]   The answer to the second certified question is yes.  While the free public services doctrine does not permit the State to generally recover its fire suppression and/or emergency services costs from a party whose negligence created the need for the services, there is an exception to the general rule which will allow the State to recover the costs of its service where portions of the lands protected by the fire suppression effort were State lands.

[¶24]   The limited answer to the legal aspect of the third question certified is not as a matter of law.  The bulk of the question is factually loaded and cannot be answered because it raises questions of fact that will need to be decided by the trier of fact.